Charlene E. BRASWELL and, Gary L. Braswell Co–Administrators of the Estate of Kathleen Braswell, Deceased and, Charlene Braswell and Gary L. Braswell, individually, Plaintiffs/Appellants,

v.

Richard CAROTHERS, III, and Franklyn B. Sleadd, Defendants/Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

April 26, 1993.

Application for Permission to Appeal Denied by Supreme Court

Aug. 2, 1993.

Gary Fox, Burcham & Fox, Union City, for plaintiffs/appellants.

William R. Neese, Dresden, George C. Thomas, Dresden, for defendant/appellee, Richard Carothers, III.

Dan L. Nolan, Landon W. Meadow, Daniel, Harvill, Batson & Nolan, Clarksville for defendant/appellee, Franklyn B. Sleadd.

FARMER, Judge.

This appeal is from the trial court's grant of summary judgment in favor of Appellees.

On July 4, 1989, Kathleen Braswell (Kathleen), daughter of Appellants, Charlene and Gary Braswell, was fatally injured. Her body was discovered pinned beneath a five-wheel all terrain vehicle (ATV) near the home of Appellee Richard Carothers, III (Carothers). His son, Michael Carothers (Michael) was Kathleen's boyfriend. The body was removed to the hospital morgue pursuant to the orders of Appellee Dr. Franklyn Sleadd (Sleadd), the county medical examiner of Henry County. On July 5, 1990, Sleadd performed an autopsy on the body and listed the manner of death as natural and the official cause of death as asphyxiation. On his report, he noted multiple abrasions on the face, right neck, back, right ear and legs. The report also revealed traces of lithium.

On the night of July 4, Michael drove to the Braswell's home in Woodland Mills. While Michael was present, the Braswells received a call from authorities advising that something had happened to their daughter. The Braswells and Michael drove to the Henry County Hospital and upon arrival were informed of Kathleen's death.

On July 3, 1990, the Braswells, as parents and next of kin of the deceased, filed suit against Michael Carothers, Richard Carothers, Jr., Kit Eisterhold, Christopher Carothers, Spinks Clay Company, Inc., Unknown Defendants A, B, and C, and Sleadd, alleging the wrongful death of their daughter by Michael and a conspiracy by the other defendants to protect him from criminal prosecution.[1] They alleged the following events took place: On July 4, 1989, Kathleen was at Carothers's home in the company of Michael and Chris Carothers, Kit Eisterhold and other unknown defendants. Between 9:00 and 10:00 p.m., Kathleen and Michael began arguing. Between 9:45 and 10:00 p.m., the argument persisted resulting in Michael striking Kathleen with a chair, critically or fatally wounding her. Michael attempted to dispose of the body to make it look as though she was killed in a vehicular accident by placing her body in a ditch and turning the ATV over on top of her, with the assistance of one or more defendants. After the killing, Michael, in a panicked state, drove to the Braswell's home and stated that he had broken a chair during an argument with Kathleen, but did not strike her and asked that the Braswells believe him. When the Tennessee Highway Patrol called advising that there had been an accident, Michael stated, "[i]ts about Kathy. She's dead," but there was no mention of her death by the authorities in summoning the Braswells to the hospital.

As to the conspiracy charge, the Braswells specifically alleged that Carothers assisted his son by advising him to leave the scene and to make certain statements regarding the event, contacted other persons and gave false information regarding the true facts of the death. They alleged that Sleadd falsified the cause of death as shown on the autopsy and certificate of death; that he is a close friend of the Carothers family and that his son and Michael are best friends; that he diagnosed the cause of death as asphyxiation without ever having examined or viewed the body; and that he was contacted by a named or unnamed defendant, apprised of the circumstances and asked to assist by falsifying information regarding the true cause of death. The Braswells further alleged that

1. The Braswells voluntarily dismissed the action against all defendants, except Carothers and Sleadd, without prejudice.

they endured "emotional strain" due to these actions constituting "outrageous conduct."

On July 20, 1990, the Braswells amended their complaint to identify themselves as co-administrators of their daughter's estate and to add themselves as plaintiffs individually. The amended complaint also corrected a misnomer to identify Richard Carothers, III as the proper party to the suit and not Richard Carothers, Jr.

Both Carothers and Sleadd filed motions to dismiss, asserting the defenses of the statute of limitations and failure to state a claim upon which relief can be granted. Sleadd additionally claimed immunity from suit pursuant to T.C.A. § 38–7–112 (Immunity of persons performing examinations and autopsies) and, in the alternative, T.C.A. § 29–20–310(c) (Governmental immunity). Both filed affidavits in support of their motions.

The trial court denied Carothers's motion, finding that the amended complaint related back to the time of the original filing. Sleadd's motion, treated as one for summary judgment pursuant to Rules 12.03 and 56 T.R.C.P., was granted on the ground that no genuine issue of material fact existed and that Sleadd was entitled to judgment as a matter of law.

Carothers also filed a motion for judgment on the pleadings and summary judgment, asserting failure to state a claim and also that no genuine issue of material fact existed. The trial court granted the motion.

The Braswells filed a motion to rehear and reconsider the order granting summary judgment to Carothers and a motion to vacate the summary judgment granted Sleadd, on grounds of newly discovered evidence. Both motions were denied.

We perceive the issues as follows:

1. Whether Appellants' claim against Carothers is barred by the applicable statute of limitations.

2. Whether Appellants' claim against Sleadd is barred by the applicable statute of limitations.

3. Whether Appellants failed to state a claim upon which relief can be granted.

4. Whether the trial court erred in granting summary judgments to Sleadd and Carothers on the ground that no genuine issue of material fact existed.

5. Whether the trial court erred in denying Appellants' motions to rehear and reconsider the order granting summary judgment to Carothers and to vacate the summary judgment granted Sleadd on grounds of newly discovered evidence.

6. Whether Sleadd is the recipient of governmental immunity pursuant to T.C.A. § 38–7–112 and T.C.A. § 29–20–101 et seq.

■ We first consider whether Appellants' claim against Carothers is barred by the applicable statute of limitations. The statute of limitations for personal injury claims is one year. T.C.A. § 28–3–104. This includes personal injuries resulting from the tort of civil conspiracy. See, *Harvest Corp. v. Ernst and Whinney*, 610 S.W.2d 727, 729–30 (Tenn. App.1980). Appellants' original claim was filed July 3, 1990. The statute of limitations ran July 5, 1990. Appellants amended their complaint July 20, 1990 to correct a misnomer and identify Carothers as the proper party to the suit.

■ Carothers relies upon Rule 15.03 T.R.C.P. and argues that Appellants' amended complaint does not relate back to the original filing because he did not receive notice of the suit "within the period provided by law for commencing the action." Rule 15.03 T.R.C.P. provides:

Whenever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a misnomer or other similar mistake concerning the identity of the proper par-

ty, the action would have been brought against him.

Carothers's affidavit states that he did not receive actual notice of the suit until July 7, 1990 when he was informed of the claim by attorney William Neese. The record reveals that a summons, issued to Richard Carothers, Jr., was served upon Neese on July 5, 1990, stating that it along with a copy of the complaint had been served by the deputy sheriff upon "William R. Neese (Atty. For Defendant)." It is apparent to this Court from the record that this method of service was by agreement of counsel, since the complaint and summons are generally served upon an individual defendant personally. Rule 4.04(1) T.R.C.P. Further, the record does not disclose that the defendant sought to contest this manner of service of process.

We hold that service upon Mr. Neese, the attorney for Richard Carothers, III, constitutes notice to Carothers. Therefore, we conclude that he received notice within the period provided by law for commencing the action. Although the summons stated that suit was against Carothers, Jr., we find that the complaint unequivocally reveals that the suit is against Michael's father, Carothers, III when it reads: "It is believed that the defendant Michael Carothers contacted his Father, Richard Carothers, Jr. and advised him to leave the scene...." The complaint further states, "based upon information and belief, it is further alleged that the defendant Richard Carothers, Jr., assisted his son and that he advised him to leave the scene...." We conclude that Neese knew his representation was of Carothers, III and not Carothers, Jr.

An amendment adding a new party does not relate back to the date of the original complaint unless two requirements are satisfied. First, it must be shown that the new party has received such notice of the institution of the action that there exists no prejudice in defending on the merits; and second, that the new party "knew or should have known that, but for a misnomer or other similar mistake concerning the identity of the proper party, the action would have been brought against him." *Lease v. Tipton,* 722 S.W.2d 379, 380 (Tenn.1986). We find no evidence suggesting that Carothers was prejudiced in his defense of this action. His attorney received notice within the time to commence suit and the complaint clearly identifies Carothers as the proper party. Therefore, but for the misnomer he knew or should have known that suit was against him. Accordingly, we find that Appellants' action against Carothers is not barred by the statute of limitations.

We next consider whether Appellants' claim against Sleadd is barred by the applicable statute of limitations. Sleadd contends that the individual claims of Appellants, filed fifteen days after the one-year statute of limitations, do not relate back to the time of the original filing because Rule 15.03 T.R.C.P. warrants exception for the addition of new defendants only and not new party plaintiffs. This Court has previously held that "[a] plaintiff may usually amend, under the relation back provision ... to substitute or add as plaintiff the real party in interest." *Osborne Enterprises, Inc. v. City of Chattanooga,* 561 S.W.2d 160, 163 (Tenn.App.1977) (quoting 35A C.J.S., Federal Civil Procedure, § 347, p. 531). The three primary considerations in determining whether an amendment adding a new party plaintiff relates back to the date of the original pleading are "(1) whether the defendant received adequate notice of the claim against him; (2) whether the relation back of such an amendment would unfairly prejudice the defendant; and (3) whether there is an 'identity of interest' between the original party plaintiff and the new party plaintiff." *Osborne,* 561 S.W.2d at 164.

In determining whether the adversary has had fair notice, the usual emphasis of 'conduct, transaction or occurrence' is on the operational facts which give rise to a claim by a particular party based on any one or all of the theories conjured up, whether timely or belatedly. But when it comes to a late effort to introduce a new party, something else is added. Not only must the adversary have notice about the operational facts, but it must have had fair notice that a legal claim existed in, and was in effect being asserted by, the party belatedly brought in.

*Id.* (quoting *Williams v. United States,* 405 F.2d 234, 236–38 (5th Cir.1968)).

Applying these considerations to the instant case, we note that Sleadd was served with notice of Appellants' claim July 5, 1990. The operational facts in the original complaint are identical to those in the amended complaint. It is obvious that Appellants' original complaint alleges the torts of civil conspiracy and outrageous conduct and that these claims would apply to Appellants, individually. If the defendant has fair notice from the original pleadings that the new parties' claim is also involved, then the defendant suffers no prejudice. *Osborne,* 561 S.W.2d at 164. Finally, there is clearly "identity of interest" as the parties did not change, only their capacities did. We conclude that Appellants' amended complaint relates back to the date of the original filing and is not time barred.

■ We now address whether Appellants have failed to state a claim upon which relief can be granted. Carothers argues that Appellants failed to state a cause of action by alleging the endurance of "emotional strain" only as opposed to severe or serious mental injury. To establish a claim for outrageous conduct the actionable conduct should be set out in the complaint. *Medlin v. Allied Investment Co.,* 217 Tenn. 469, 398 S.W.2d 270, 275 (1966). One must allege more than mere legal conclusion and describe the substance and severity of the conduct that is allegedly outrageous. *Id.* Appellants allege that Sleadd committed the following actions constituting outrageous conduct: (1) falsified the cause of death as shown on the autopsy and certificate of death; (2) is a close personal friend of the Carothers family; (3) ordered the immediate removal of the body from the scene of the accident prior to the release by the Highway Patrol; and (4) diagnosed the cause of death as asphyxiation without ever having examined or viewed the body for an official determination of the cause of death. As to Carothers, Appellants allege: (1) Carothers assisted his son in that he advised him to leave the scene and to make certain statements regarding the facts of the case; and (2) contacted other persons and gave false information regarding the facts of the events

occurring and leading to the death of the deceased.

■ The duty of this Court is to determine whether Appellees' conduct establishes the elements of the tort. *Chandler v. Prudential Ins. Co.,* 715 S.W.2d 615, 622 (Tenn.App. 1986). We find that it does not. Appellants have failed to allege the substance and severity of the conduct to the extent that it could be considered outrageous. Although these acts, if true, would certainly be tortious or even criminal, they are not founded on conduct characterized as "outrageous." *See, Gann v. Key,* 758 S.W.2d 538, 544 (Tenn.App. 1988). The tort of civil conspiracy, in and of itself, is not actionable under a claim for outrageous conduct. We conclude that Appellants have failed to state a cause of action for this tort.

■ We find that Appellants have stated a cause of action for civil conspiracy. A civil conspiracy is a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Kirksey v. Overton Pub, Inc.,* 739 S.W.2d 230, 236 (Tenn.App.1987) (quoting *Dale v. Thomas H. Temple Co.,* 186 Tenn. 69, 208 S.W.2d 344, 347 (1948)). The requisite elements of the cause of action are common design, concert of action, and an overt act. *Koehler v. Cummings,* 380 F.Supp. 1294, 1313 (M.D.Tenn.1974). Injury to person or property, resulting in attendant damage, must also exist. *Koehler,* 380 F.Supp. at 1313.

■ Appellants allege that Carothers and Sleadd participated in the common design of protecting Michael from possible criminal prosecution; that they acted in concert by failing to divulge information leading to the discovery of the true facts; and that they acted overtly by falsifying documents or statements to carry out the purpose of the conspiracy. They further allege that by these concerted actions they endured emotional strain. Damages for mental suffering are recoverable in an action for civil conspiracy. *Lackey v. Metropolitan Life Ins. Co.,* 30 Tenn.App. 390, 206 S.W.2d 806 (1947). Based on the foregoing, we conclude that

Appellants have stated a claim for civil conspiracy.

We next consider whether the trial court erred in granting summary judgments to Carothers and Sleadd. In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our supreme court held:

> In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, ... the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. Then, if there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied.

*Byrd*, 847 S.W.2d at 210–11 (citations omitted).

The party seeking summary judgment carries the burden of persuasion that no genuine and material factual issues exist, and that he is entitled to judgment as a matter of law. *Id.* at 211. Carothers's affidavit in support of his motion for summary judgment reads, in pertinent part, as follows:

> I did not assist my son Michael in covering up any illegal or improper acts concerning the death of [Kathleen]. I did not advise my son to leave the scene of her death or to make any statements regarding the facts of the case....
>
> I have never contacted anyone concerning this case for the purpose of giving false information ... I have never given false information about this case. I have never asked anyone to give false information concerning this case,.... I have never done any act or refrained from doing any act calculated to cover up, falsify, or affect any facts or to mislead anyone concerning this case....
>
> I did not assist anyone in moving the body of [Kathleen] or in staging any accident. I have not given anyone any advice concerning the staging of an accident.

Once the moving party has shown that there is no genuine issue of material fact, it is for the nonmoving party to then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute warranting a trial. *Id.* (citing *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn.1978)). The affidavit of Mrs. Braswell reveals certain discrepancies in the statements made by Carothers in his deposition. Mrs. Braswell states that her number was listed in the phone book in 1989 even though Carothers stated that he attempted to call the Braswells at their home, but could not find their number in the phone book. She contradicts Carothers's denial of a statement made in his presence by Michael, at the Braswell's home, that his dad thought that he struck Kathleen with a chair. Mrs. Braswell states that Michael did in fact make that statement in Carothers's presence. Mrs. Braswell states that her daughter and Michael, who were living together at the time, did not have a phone in their apartment even though Carothers stated that he attempted to call his son's apartment but was unable to reach him at that number. She further points to a discrepancy as to the testimony of Chris Carothers regarding the specific time that he called Carothers. Due to this discrepancy, Mrs. Braswell contends that the phone call to Carothers was made by Michael, not Chris, and that the time records of the phone calls substantiate her allegation. She submits that the court could infer that this conversation was in furtherance of the conspiracy.

The deposition of Mr. Braswell was also considered by the trial judge. Mr. Braswell testified as follows:

Q ... Now, what specifically do you claim that [Carothers] did?

A I'm not really sure at this time.

. . . .

Q So right now today you're not specifically saying he did anything?

A He did make the statement at our house he thought Michael hit her with a chair.

. . . .

Q ... So what else ... are you saying that he did to cover up or conspire to do anything?

A That's all I know of at this time.

. . . .

Q ... And what facts make you think [that Carothers advised Michael to leave the scene] ...?

A Well, from the mental state that Michael seemed to be in the night he came to our house, somebody had to have told him what to do. That's my opinion.

Q Okay. In your opinion he was in such a state that somebody had to tell him what to do and that person then, in your opinion, might have been his father?

A That's right.

Q Or might have been somebody else?

A Yeah, it could have been.

....

Q And you have no evidence, ... that, [Carothers] called up and said, you need to change this report, or help us out, Doc, or—

A No.

....

Q ... what false information do you say [Carothers] gave, and to whom?

A That I don't know at this time.

....

Q ... So, ... you don't know what part, if any, [Carothers] had in this whole thing?

A No.

We find that the testimony of Mr. Braswell reveals absolutely no evidence that Carothers conspired to cover-up the death of the Braswell's daughter. Mrs. Braswell's affidavit pertains to evidence that, taken as true as we must, would not affect the outcome of this suit. Only disputes over facts that could affect the outcome of the litigation will preclude the grant of summary judgment. *Byrd,* 847 S.W.2d at 215. We believe that Mrs. Braswell's statements present merely a "scintilla of evidence" and this is insufficient to establish a genuine issue of material fact. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Furthermore, the facts on which the nonmoving party relies must be admissible in evidence. *Price v. Becker,* 812 S.W.2d 597 (Tenn.App.1991). Much of Mrs. Braswell's affidavit asks this Court to make inferences based upon inferences. A fact cannot be proven by drawing an inference from inference and, as a method of arriving at a conclusion of fact, is inadmissible. *Martin v. Braid Elec. Co.,* 9 Tenn.App. 542 (1929). Viewing the evidence in the light most favorable to the Braswells, we hold that the trial court did not err in granting summary judgment to Carothers.

■ We now consider whether summary judgment was properly granted to Sleadd. By affidavit, Sleadd states, in pertinent part:

Inasmuch as the cause of death was not apparent, based upon a clinical examination of the body, ... I felt that in my best professional opinion, ... that an autopsy was necessary for me to determine the cause of death. I performed an autopsy on ... [Kathleen] on July 5, 1989.

....

... In my opinion, the autopsy report and the Certificate of Death were consistent with the information given to me as to the precipitating cause of the person's death, being an ATV accident.... My autopsy report was made after a complete examination of [Kathleen], and, in my opinion, it is accurate.

Attached to Sleadd's affidavit was the "Report of Investigation by County Medical Examiner" stating the probable cause of death as asphyxiation.

Countervailing affidavits considered by the court included those of Mrs. Braswell, Mr. John Bay, an optometrist, Dr. Phillip Sherman, Ms. Amy Hasten, a news reporter, and nurse Kay Gant. Mrs. Braswell's affidavit states that neither she nor her husband were given notice of the autopsy, contrary to Sleadd's affidavit that they were served an order for autopsy. Hasten stated that Sleadd informed her that he did not find lithium in the body, but was told by someone that she was taking lithium by prescription. Gant asserted that Sleadd stated the cause of death as asphyxiation prior to autopsy. Bay's affidavit contradicted Sleadd's finding that the deceased's sclerae or "whites of her eyes" were clear, stating that "the sclerae with a person containing the level of alcohol indicated in the autopsy report would have been red or ... bloodshot...." Sherman stated that he viewed the body in the funeral

home while it was being prepared by morticians. He remembered seeing several abrasions about the face and neck and found no evidence of trauma below the neck. He stated that there was a large area of contusion and abrasion covering the right side of the neck that would be consistent with a blow. He further stated that he reviewed Sleadd's autopsy report and, from his recollection of viewing the body, did not recall seeing a particular abrasion as identified on the report by Sleadd.

The trial court found that Appellants failed to raise a genuine issue of material fact by presenting no countervailing evidence that Sleadd incorrectly or falsely determined the cause of death. We agree. Appellants have failed to set forth any evidence supporting their allegation that Sleadd falsified the cause of death. We conclude that the trial court's grant of summary judgment in favor of Sleadd was proper.

■■■ We next address whether the trial court erred in denying Appellants' motions to rehear and reconsider the order granting summary judgment to Carothers and to vacate the summary judgment granted Sleadd on grounds of newly discovered evidence. Appellants contend that the testimony of Michael Carothers and the TBI reports present new evidence establishing a genuine issue of material fact that Carothers conspired to cover up the true cause of death. Upon review of the record, we conclude that this evidence was, or should have been, available to Appellants prior to the hearing on the motion. Certainly the testimony of Michael was available. As to the TBI reports, counsel acknowledges that, on February 1, 1991, during the deposing of Mrs. Braswell, he had requested the TBI reports, but could not receive them until he subpoenaed and deposed a TBI agent. This was over three months prior to the hearing on the motion. We regret the unfortunate circumstance regarding the illness of counsel's partner, but this does not alter the fact it was available.

Appellants rely upon *Schaefer by Schaefer v. Larsen*, 688 S.W.2d 430 (Tenn.App.1984), to argue their position. *Schaefer* held:

[W]hen a summary judgment has been granted ... but prior to that judgment becoming final, the plaintiff is able to produce by motion facts which are material and are in dispute, the motion to alter or amend the judgment should be looked upon with favor, as the purpose of the summary judgment procedure is ... only to weed out cases ... in which there is no genuine issue of fact.

*Schaefer*, 688 S.W.2d at 433–34. We note that *Schaefer* requires the moving party to produce facts which are "material." As we review the record, Appellants contend that the testimony of Michael creates a discrepancy as to the timing of particular phone calls between Carothers and his son and that the TBI records reveal that Sleadd was told by someone that the deceased used lithium. Appellants argue that Carothers was the only one with knowledge of lithium and that, therefore, he was the one who informed Sleadd. There is no evidence in the record supporting this assumption. Nonetheless, this information reveals factual disputes that are immaterial to the outcome of the case. We conclude that the trial court did not err in failing to rehear and reconsider its grant of summary judgment to Carothers.

Appellants also argue that the TBI reports present "new evidence" that create a genuine issue of material fact as to Sleadd. We conclude that this information was, or should have been, available to counsel prior to the hearing on the motion and cannot truly be considered "newly discovered." "[T]he setting aside of a final judgment lies within the sound discretion of the trial court." *Brumlow v. Brumlow*, 729 S.W.2d 103 (Tenn.App. 1986). We find no abuse of discretion as to this matter and hold that the trial court did not err in failing to vacate the summary judgment in favor of Sleadd.

In view of our decision, it is not necessary to consider whether Sleadd is immune from suit.

The judgments of the trial court are affirmed. Costs are taxed to Appellants for which execution may issue if necessary.

TOMLIN, P.J., (W.S.), and HIGHERS, J., concur.