TOM AND KAREN MOORE )
)     Appeal No.
     Plaintiffs/Appellants,    )     01A01-9507-CV-00295
)
v.                               )     Davidson County Circuit
)     Court No.94C-1356
LLOYD A. WALWYN, M.D.,       )
)
     Defendant/Appellee.       )

**FILED**

**Jan. 19, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE SIXTH CIRCUIT COURT OF DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE THOMAS W. BROTHERS, JUDGE

SHELLEY I. STILES
5214 Maryland Way, Suite 210
Brentwood, Tennessee 37027

CHRISTOPHER K. THOMPSON
117 East Main Street
Post Office Box 916
Murfreesboro, Tennessee 37133-0916
     ATTORNEYS FOR PLAINTIFFS/APPELLANTS

ROSE P. CANTRELL
GARRETT E. ASHER
Parker, Lawrence, Cantrell & Dean
200 Fourth Avenue North
Fifth Floor
Nashville, Tennessee 37219
     ATTORNEYS FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

SAMUEL L. LEWIS, JUDGE

## OPINION

This is an appeal by plaintiffs/appellants, Tom and Karen Moore, from the trial court's orders granting summary judgment in favor of defendant/appellee, Dr. Lloyd A. Walwyn, and denying appellants' motion to reconsider the grant of summary judgment

The procedural history and pertinent facts are as follows. On 1 May 1993, Mr. Moore fell from the roof of a house. He went to the emergency room at Tennessee Christian Medical Center ("TCMC"). Appellee examined Mr. Moore and diagnosed him as having a fractured left wrist and a fractured left distal tibia and fibula. Appellee treated Mr. Moore's injuries and performed operations on his wrist and leg. Following Mr. Moore's discharge from the hospital, appellee followed Mr. Moore's progress through scheduled office visits.

On 16 June 1993, Mr. Moore went to appellee's office for one such visit. During the visit, appellee decided that he needed to remove the external fixator on Mr. Moore's left leg and apply a long leg cast. Appellee was to perform the procedure on 29 June 1993 at TCMC, but Mr. Moore did not show up for the appointment and has not been to appellee's office since the June 16 visit. Later, Mr. Moore developed an infection. As a result, doctors, other that appellee, performed nine operations.

Appellants filed their complaint on 2 May 1994 alleging that appellee negligently failed to prescribe antibiotics.[1] This failure, they argued, caused injuries to Mr. Moore which required the nine additional surgical procedures. In response, appellee

---

[1] Appellants also claimed that TCMC was negligent. The trial court granted TCMC's motion for summary judgment. Initially, appellants' notice of appeal included TCMC, but the trial court entered an order of voluntary dismissal as to TCMC on 20 June 1995.

filed an answer and a counterclaim which he later voluntarily dismissed.

On 19 October 1994, appellee filed a motion for summary judgment. In support of the motion, appellee filed his own affidavit. Appellants filed their response opposing the motion and attached a document prepared by Dr. Bruce Schlafly of St. Louis, Missouri. Appellants referred to this document as a counter-affidavit. The document included a letter with a curriculum vitae ("the letter") and a report on Mr. Moore ("the report"). On 11 January 1995, the trial court granted the motion for summary judgment. In his order, the trial judge stated as follows:

> Specifically, the Court finds that there is no genuine issue as to a material fact concerning whether the defendants deviated from the recognized standard of acceptable professional practice in the care and treatment of the plaintiffs. The Court additionally finds that there is no genuine issue as to a material fact on the issue of causation.

On 7 February 1995, appellants filed a motion to reconsider and a second affidavit from Dr. Bruce Schlafly. On 14 March 1995, the trial judge entered an order denying the motion.

Appellants filed their first notice of appeal on 13 April 1995 informing the court that they were appealing the March order. Six days later, the trial court entered final judgment, and appellants filed a second notice of appeal in regard to this order.

Appellants presented this court with the following issue: "Whether the circuit court erred in granting Walwyn's motion for summary judgment and in denying Moore's motion to reconsider by concluding that there was no genuine issue of material fact for trial when a genuine issue of an outcome determinative fact was raised by counter-affidavits of Bruce Schlafly, M.D., an

3

orthopaedic surgeon." We are of the opinion that the trial court did not err.


## I.    Motion for Summary Judgment


The courts of Tennessee have explained the law of summary judgment in great detail. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). Upon the filing of a motion, the moving party has the burden of proving that there are no genuine issues of material fact. *Id.* at 215. The moving party may make such a showing in several ways, but may not rely solely on a conclusory statement that the nonmoving party has no evidence. *Id.* at 215 & n.5. Once the moving party has provided the court with a properly supported motion, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact or the need for further discovery. *Id.* at 215 & n. 6. In satisfying its burden, the nonmoving party may not simply rely on the allegations and denials in the pleadings. Instead, the party must produce evidence that establishes the existence of a material dispute. Such evidence must be in the form of an affidavit or in the form of any of the other discovery materials listed in Tennessee Rule of Civil Procedure 56.03. *Id.* at 215. Further, the facts relied on by the nonmoving party must be admissible at trial, but need not be in an admissible form. *Id.*

In passing upon a motion for summary judgment, the trial judge must "view the evidence in a light favorable to the nonmoving party and allow all reasonable inferences in his favor." *Id.* If the trial judge decides that there are no genuine issues of material fact and that the law entitles the moving party to a judgment, he must grant the motion. *Id.* at 214. More specifically, medical malpractice claims require

4

expert testimony as to the issues of negligence and proximate cause "unless the act of alleged malpractice lies within the common knowledge of a layman." *Bowman v. Henard*, 547 S.W.2d 527, 530-31 (Tenn. 1977). Accordingly, "in those malpractice actions wherein expert medical testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise." *Id.* at 531.

Given the above, it is plain to see that affidavits are very important tools in any summary judgment proceeding, particularly when the underlying claim is medical malpractice. Affidavits, however, are not simple statements from a witness or expert. To the contrary, an affidavit is "[a] written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." Black's Law Dictionary 58 (6th ed. 1990); *see also Grove v. Campbell*, 17 Tenn. 8 (1836). In addition, for the purposes of summary judgment, an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tenn. R. Civ. P. 56.05 (1995). In medical malpractice cases, a witness is not competent to testify as to the elements of a medical malpractice claim unless the witness is "licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that

5

the alleged injury or wrongful act occurred." Tenn. Code Ann. §29-26-115(b) (1980); *see also Payne v. Caldwell*, 796 S.W.2d 142, 143 (Tenn. 1990) (holding that the competency requirement of §29-26-115(b) applies to all of the elements listed in §29-26-115(a)). The failure of a document to meet any one of these requirements renders it useless as an affidavit for summary judgment. *See Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498-99 (Tenn. 1978) (holding that an affidavit, which failed to meet the requirements of Tennessee Rule of Civil Procedure 56.05, was insufficient); *State Dep't of Human Servs. v. Neilson*, 771 S.W.2d 128, 130 (Tenn. App. 1989) (finding that an affidavit on information and belief is not based on personal knowledge and is insufficient unless specifically provided for by statute); *Moncrief v. Fuqua*, 610 S.W.2d 720, 724-26 (Tenn. App. 1979) (holding that affidavits were insufficient where affiants were not competent to testify in medical malpractice case).

Appellee filed his motion for summary judgment claiming that there were no genuine issues of material fact. In support of his motion, appellee filed his own affidavit which he signed and had notarized. Appellee testified as follows:

> I am, and was at all times pertinent to this lawsuit, familiar with the standard of acceptable professional practice in my specialty in this community. I have personal knowledge of the facts contained in this affidavit.
>
> . . . .
>
> 7. By experience and training, I am familiar with the recognized standard of professional practice in orthopaedic surgery in Nashville, Tennessee and similar communities. In everything I did in Mr. Moore's case, I acted with ordinary and reasonable care in accordance with such standard. Furthermore, no deviation from the applicable standard of care was the cause of any damage or condition of which Mr. Moore may complain or suffer in this case.

This testimony and the other testimony found in the affidavit supported appellee's motion and shifted the burden to appellants

6

to prove the existence of a genuine issue of material fact.

In response, appellants filed the letter and the report mentioned previously. Neither of these documents, however, created a genuine issue of material fact. In addition, the trial court should not have even considered these documents because the testimony contained in them was not admissible and the documents were neither affidavits nor any of the other types of discovery materials listed in Tennessee Rule of Civil Procedure 56.03.

To explain, the testimony contained in the letter and the report was inadmissible as evidence to establish the elements of the medical malpractice claim because it failed to establish that Dr. Schlafly met the competency requirements of Tennessee Code Annotated section 29-26-115(b). *See* Tenn. R. Evid. 601 (1995). Although specifically required by that section, the documents did not prove that Dr. Schlafly's profession or specialty "would make his expert testimony relevant to the issues in the case" or that Dr. Schlafly practiced his specialty in Tennessee or a contiguous state "during the year preceding the date that the alleged injury or wrongful act occurred." Tenn. Code Ann. §29-26-115(b) (1980). For these same reasons, the letter and the report failed to meet the requirements of Tennessee Rule of Civil Procedure 56.05 and were not proper opposing affidavits.

In addition, the letter was not an affidavit because a notary did not properly authenticate Dr. Schlafly's signature. The report is the only document properly sworn to by Dr. Schlafly. This attestation, however, does not apply to the letter because the notary witnessed the signing of the report on 14 December 1994 and Dr. Schlafly dated the letter 15 December 1994.

7

Despite these apparent flaws in the report, appellees argued that it was sufficient to withstand the motion. Even if we found that the report was proper evidence for use on summary judgment, we would still have to uphold the decision of the trial court because the report failed to establish a genuine issue of material fact as to deviation from the acceptable standard of care and causation.

To prove medical malpractice, a plaintiff must establish that the defendant's actions fell below the standard of acceptable professional practice in the defendant's profession or speciality and in the defendant's community or in a similar community. Tenn. Code Ann. §29-26-115(a)(1),(2) (1980). Further, in this case, appellants needed expert testimony to establish this element because the malpractice was not in the common knowledge of laymen. Appellants, however, failed to satisfy their burden.

> To explain, in the report Dr. Schlafly stated as follows:
>
> However with a closed fracture, the standard recommendation is to start antibiotics intravenously in the operating room immediately prior to the start of the operation. . . .
>
> In my opinion, intravenous antibiotics should have been given at the time of the operation of 5/2/93, as well as the operation of 5/5/93. . . . In my opinion, it fell below the standard of care for a surgeon to do these operations without standard antibiotic prophylaxis.

This statement does not describe the standard in Nashville or explain that it is the standard in a similar community. Moreover, the statement does not even describe a "standard of acceptable professional practice." Tenn. Code Ann. § 29-26-115(a)(1) (1980). For example, Dr. Schlafly used the term "recommendation." This term suggests that a doctor has a choice as to whether to use prophylactic antibiotics. It does not suggest a standard that a doctor must follow.

8

At the end of the report, Dr. Schlafly described several articles that advocated the use of prophylactic antibiotics. Unfortunately, Dr. Schlafly's synopsis of these articles failed to establish a standard for the court to apply in this case. The first article, published in 1974, described a study which found that the use of prophylactic antibiotics reduced the threat of postoperative infection from 5% to 2.8%. The second article reported that many orthopaedic surgeons used prophylactic antibiotics, and the third article described the recommended prophylactic regimen. The articles, however, do not describe the standard in Nashville or a similar community. Further, they do not clearly set forth a particular standard, but instead, seem to describe one alternative.

A second element necessary to a medical malpractice claim is causation. Tenn. Code Ann. §29-26-115(a)(3) (1980). There are two forms of causation required to sustain a medical malpractice action. These are cause in fact and proximate cause. *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). Cause in fact "means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Id.* at 598. To establish such, the plaintiff must show within a reasonable degree of medical certainty that the injury was a probability. *Id.* at 602. In this case, the report failed to provide the expert testimony needed to contradict appellee's affidavit because it failed to establish within a reasonable degree of medical certainty that the failure to use the antibiotics probably caused Mr. Moore's injuries.

In the report, Dr. Schlafly stated as follows:

It is entirely possible that Mr. Moore developed his bone infection because the fracture was seeded with bacteria at the time of surgery, bacteria which prophylactic antibiotics could have eradicated. . . .

9

. . . .

> Of course, infections can have many different causes,
> but I believe that the omission of intravenous
> antibiotics (except for the single dose), during the
> May hospitalization at Tennessee Christian Medical
> Center, was probably a contributory factor in the later
> development of Mr. Moore's bone infection, as best as I
> can determine from the medical records available to me.

Arguably, this statement satisfied the probability requirement of cause in fact. Nevertheless, it failed to state that the conclusion was with a reasonable degree of medical certainty. Dr. Schlafly's statement that the conclusion was "as best as [he could] determine from the medical records available to [him]" failed to provide the court with the degree of certainty required by the case law. This is further supported by the fact that Dr. Schlafly did not have all of the medical records available to him. In the report, he admits that he did not review the actual x-rays or the "records listing the drugs used in the operating room or the recovery room." From Mr. Moore's bill, Dr. Schlafly discovered that someone gave Mr. Moore an antibiotic injection on 2 May 1993, but he did not have the records detailing the actual time of the injection. Note that one of the operations performed by appellee occurred on this date. The importance of this lack of information is without question. Dr. Schlafly's conclusion is that the failure of appellee to administer prophylactic antibiotics caused the infection which led to Mr. Moore's subsequent operations; yet, he makes this conclusion without having reviewed all of the records describing which medications appellee administered to Mr. Moore.

In summary, the report and the letter failed to provide the proof necessary to overcome appellee's motion for summary judgment. Most important, the documents were not affidavits nor were they any of the other types of discovery materials mentioned in Tennessee Rule of Civil Procedure 56.03. Further, the

10

testimony contained in both documents was inadmissible because it did not establish that Dr. Schlafly was competent under Tennessee Code Annotated section 29-26-115(b). Thus, the appellants could not use his testimony to establish the existence of genuine issue of material fact. In addition, the record, considered as an affidavit, failed to establish a material dispute as to deviation from the standard of care and causation. Therefore, the trial court did not err in granting appellee's motion for summary judgment.

## II. Motion to Reconsider

Appellant's next issue is whether the trial court properly denied their motion to reconsider. In his order denying the motion, the judge stated as follows:

> The Court finds that the Plaintiffs have submitted and rely upon the affidavit of Bruce Schlafly, M.D., in support of their Motion to Reconsider. The Court finds that the Plaintiffs relied upon affidavit testimony from this same witness in opposition to the Defendants' Motions for Summary Judgment. The Court further finds, that, in this proceeding, the Plaintiffs have not made a sufficient showing as to why the affidavit testimony of Dr. Schlafly in support of the Motion to Reconsider could not have been submitted earlier in response to the Defendants' Motions for Summary Judgment and why the testimony of the same witness should be considered again in this proceeding. Therefore, the Court specifically finds that the affidavit testimony of Dr. Schlafly relied upon to support the Motion to Reconsider is not entitled to consideration.

We are of the opinion that the trial court was correct. The Tennessee Rules of Civil Procedure do not provide for a "motion to reconsider." Nevertheless, this court reviews such motions in light of their substance, not their form. **Bemis Co. v. Hines**, 585 S.W.2d 574,576 (Tenn. 1979). In this case, we will treat the motion, which cites to Tennessee Rule of Civil Procedure 59.04, as a motion to alter or amend.

Appellants argued that the trial court erred when it failed

11

to consider the second affidavit of Dr. Schlafly. In their brief, appellants cited *Schaefer v. Larsen*, 688 S.W.2d 430 (Tenn. App. 1984), and quoted the following passage:

> We are of the opinion that when a summary judgement has been granted because the case at that point presents no facts upon which a plaintiff can recover, but prior to that judgment becoming final, the plaintiff is able to produce by motion facts which are material and are in dispute, the motion to alter or amend the judgment should be looked upon with favor. . . .

*Schaefer v. Larsen*, 688 S.W.2d 430, 433 (Tenn. App. 1984). This case, however, fails to support appellants' argument. To begin with, the court did not even address the issue presented in this case because, unlike the present trial judge, the judge in *Schaefer* considered the late filed affidavit in making his decision. Further, the *Schaefer* court held that the trial court should look upon the motion with "favor," not that it must grant the motion.

Appellants also cited *Richland City Country Club v. CRC Equities, Inc.*, 832 S.W.2d 554 (Tenn. App. 1991), in support of their argument. As with *Schaefer*, this case does not support appellants' argument. The *Richland City* court found as follows: "Considering the fact that the affidavits were filed after the hearing on the original motion, we are of the opinion that this alone should not have precluded their consideration." *Richland City Country Club v. CRC Equities, Inc.*, 832 S.W.2d 554, 557-58 (Tenn. App. 1991). The court then quoted the portion of the *Schaefer* opinion quoted above. Analyzing these statements together, it is clear that a trial court may decide to not consider an affidavit, filed after the court has granted a motion for summary judgment, as long as the reason for the decision is more than the fact that the party filed the affidavit late.

A second opinion written after *Schaefer* helps to clarify

12

this issue. *Braswell v. Carothers*, 863 S.W.2d 722, 730 (Tenn. App. 1993). In *Braswell*, the trial court granted summary judgment to the Carothers and to Sleadd. The plaintiffs filed a motion to rehear and to reconsider the judgment in favor of the Carothers and a motion to vacate Sleadd's judgment. The trial court denied the motions, and the plaintiffs appealed. *Id.* at 724-25. The court of appeals addressed the trial courts' disposition of the motions separately. As to Sleadd, the court found that the new evidence offered by the plaintiffs "was , or should have been, available to counsel prior to the hearing on the motion and [could not] truly be considered 'newly discovered.'" *Id.* at 730. The court then concluded that the trial judge did not err in failing to vacate the summary judgment in favor of Sleadd. *Id.* Thus, a court may uphold its summary judgment decision if the moving party's evidence is not "newly discovered."[2]

In support of their motion, the appellants relied on the letter, the report, and the affidavit. As previously discussed, the letter and the report were in an improper form, and the testimony was inadmissible. The affidavit attached to appellants' motion to reconsider was not new evidence. The only difference between the report and the letter and the affidavit was that the affidavit contained all of the appropriate "buzz" words found in the statutes and rules. Dr. Schlafly did not state that he received other records or more information regarding the case

_____

[2] Appellants argued that the *Braswell* decision supports their case because the appellate court not only considered whether the evidence was newly discovered, but also whether it produced material facts. This is a correct statement of the court's reasoning. The problem is that this reasoning only applied to the Carothers. In a separate paragraph, the court addressed the issue as to Sleadd and did not consider whether the evidence was material.

In an earlier case, the Western Section concluded that the trial court was correct in denying a motion to reconsider where the evidence was in the possession of the nonmoving party prior to the hearing on the motion for summary judgment. *Jay Wiley's Imports, Inc. v. Triangle Imports, Inc.*, 1987 WL 12838, at *2-*3 (Tenn. App. 12 May 1987). In the course of their opinion, the court specifically distinguished *Schaefer* on the basis of new versus old evidence. *Id.* at *3.

13

which was not available to him before. Also, there were no affidavits from appellants' attorneys suggesting that they could not have obtained this information earlier. The second affidavit was nothing more than the first affidavit dressed up. Clearly, the trial judge did not abuse his discretion in deciding not to consider the affidavit nor did he err in sustaining the motion for summary judgment.

Therefore, it follows that the judgment of the trial court is in all things affirmed and the case is remanded to the trial court for any further necessary proceedings. Costs on appeal are taxed to the plaintiffs/appellants.

_____
SAMUEL L. LEWIS, JUDGE

Concur:

_____
HENRY F. TODD, P.J., M.S.

DISSENTING OPINION
WILLIAM C. KOCH, JR., J.

14