IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

**HARRY LUTHER,**

    Plaintiff-Appellant,

Vs.

**BILLY COMPTON, ET AL,**

    Defendant-Appellees.

FROM THE LAKE COUNTY
CIRCUIT COURT, No. 97-7625
THE HONORABLE R. LEE MOORE,
JR., JUDGE
C.A. No. 02A01-9710-CV-00253
*AFFIRMED IN PART, REVERSED
IN PART AND REMANDED*
Harry Luther, Pro Se
James M. Glasgow; Elam & Glasgow
of Union City, For Appellees

FILED

March 17, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

_____

MEMORANDUM OPINION[1]

_____

*CRAWFORD, J.*

Plaintiff/Appellant Harry Luther ("Luther") is incarcerated at the Lake County Regional Correctional Facility ("Correctional Facility"). On November 12, 1996, Luther was injured while working in the Correctional Facility's Vo-tech shop building. A table top that was stored on a beam above the ground fell, striking Luther in the head.[2] Luther was escorted to the Correctional Facility clinic, where he was treated for a two-inch laceration to his scalp. Luther complained of neck and spinal pain, dizziness, blurred vision, and a concussion. Defendant/Appellee Donna Klutts ("Nurse Klutts"), a nurse practitioner employed by the Correctional Facility, testified that the nurses were instructed to keep Luther in the clinic for eight hours and to conduct neurological checks every two hours.

Luther returned to the clinic the following day. The family nurse practitioner provided Luther with Tylenol and scheduled x-rays to be taken on his skull and spine. The x-rays revealed no fractures, although degenerative changes in his cervical vertebrae were noted. Luther made

_____

[1] Rule 10 (Court of Appeals). <u>Memorandum Opinion</u>. -- (b) The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

[2] Luther alleges that the table top was stored approximately ten to fifteen feet above the ground. Defendant/Appellee Ken Foster, a Correctional Facility employee stationed at the Vo-tech shop building, testified that the table top was stored approximately five feet off the ground. Foster also testified that the table top was stored there by another inmate, despite repeated instructions prohibiting the storage of table tops in that location.

several other visits within the following two weeks, complaining of pain. The nurses determined that all neurological signs were normal, but referred Luther to Defendant/Appellee Harold Butler, M.D. ("Dr. Butler").

Dr. Butler met with Luther on December 2, 1996. Dr. Butler diagnosed Luther with degenerative arthritis of the cervical spine. Medication was prescribed and Luther was instructed to use a rolled up towel when he slept instead of a pillow. The following month Luther returned to Dr. Butler, complaining of head and neck pain. Dr. Butler diagnosed Luther as having degenerative disease of the cervical spine. Dr. Butler prescribed medication for Luther, instructed him to apply moist heat to the neck, and issued him an excuse from work. Luther was also referred to the Lois DeBerry Special Needs Facility ("Special Needs Facility") in Nashville for a second opinion.

Luther was scheduled to visit the Special Needs Facility on February 24, 1997. This appointment was postponed, however, until March 13, 1997.[3] After performing additional x-rays, Lance Weaver, M.D., a physician at the Special Needs Facility, also diagnosed Luther as suffering from degenerative changes in the cervical spine. Dr. Weaver recommended that Luther receive a Magnetic Resonance Imaging ("MRI") exam. Before this was done, however, Luther was returned to the Correctional Facility on March 17.

Luther was again transported to the Special Needs Facility on April 9, 1997 and received an MRI during this visit. While at this facility, Luther again met with Dr. Weaver. Dr. Weaver allegedly told Luther that he may have to undergo surgery to correct his cervical problems. Dr. Weaver also advised Luther to receive physical therapy and provided Luther with a neck collar. Luther returned to the Correctional Facility on April 15, 1997. Luther alleges that since his return, he has not been provided with any further medical treatment or physical therapy. Nurse Klutts' affidavit states that as of June 17, 1997, Luther visited the clinic on 32 occasions as a result of his injury, and did not show up on four other scheduled visits.

On May 5, 1997, Luther filed a Complaint against Dr. Butler and numerous prison employees in their individual capacities. Luther's Complaint purports to include claims brought

---

[3] Klutts testified that the Special Needs Facility postponed the appointment.

under the Eighth Amendment to the United States Constitution, the Tennessee Constitution, 42 U.S.C. § 1983, and common law tort. He alleges that the Defendants failed to provide a safe work environment and failed to provide him with proper medical care. Luther alleges that certain of the Defendants were liable for the cause of his injury due to the hazardous work environment. According to Luther, the condition of the Vo-tech shop building did not satisfy standards set forth by the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651 et seq., or the Tennessee Occupational Safety and Health Act ("TOSHA"), T.C.A. §§ 50-3-101 et seq.. With regard to his cause of action for improper medical care, Luther's Complaint alleges that the Defendants exhibited a "flagrant deliberate indifference" to his medical condition and that Dr. Butler breached the standard of care.

After answering the Complaint, Dr. Butler filed a Motion for Summary Judgment. The Motion was supported by an affidavit by Dr. Butler, testifying that he diagnosed and treated Luther in compliance with the acceptable standard of care. Luther filed a Response to this Motion. Luther's Response included a request that the trial court abstain from ruling on Dr. Butler's Motion until after Luther had the opportunity to conduct discovery. Luther alleged that he specifically desired the opportunity to proffer opposing expert affidavits.

The remaining Defendants (hereinafter referred to as "Employee Defendants") filed a Motion to Dismiss or, alternatively, a Motion for Summary Judgment. These Defendants contend that they are immune from tort liability pursuant to T.C.A. § 9-8-307 (h) (Supp. 1997), since they were acting within the course and scope of their employment. They also asserted that the constitutional claims and 42 U.S.C. § 1983 claim should be dismissed since they did not deliberately deprive Luther of medical care in order to inflict unnecessary pain. In response, Luther filed a Response and a Motion for an extension of time to complete discovery. The Employee Defendants proceeded to file a Motion to Stay Discovery, asking the trial court to stay Luther's discovery requests until after the trial court ruled on their Motion to Dismiss.

On July 7, 1997, the trial court granted the Defendants' Motion to Stay Discovery. On September 15, 1997, the trial court entered an order granting summary judgment to all of the Defendants. Specifically, the trial court found that summary judgment was appropriate with regard to the claim against Dr. Butler since Luther failed to file a counter-affidavit by an expert.

3

With regard to the Employee Defendants, the trial court held that these Defendants were immune from the tort claims pursuant to T.C.A. § 9-8-307 (h), since the claims were for negligence and since the employees were acting within the course and scope of their employment. With regard to the 42 U.S.C. § 1983 claim, the trial court found that Luther failed to present a genuine issue of material fact concerning whether the Employee Defendants demonstrated a "deliberate indifference" to Luther's medical condition. The trial court further found that these Defendants were protected by qualified immunity since they were performing discretionary functions as government employees and that their "conduct did not violate any clearly established statutory [or] constitutional rights of which a reasonable person would have known."

On appeal, Luther contends that the trial court erred in concluding that the Employee Defendants were immune from suit. Luther also asserts that summary judgment was inappropriate since he was not given the opportunity to conduct discovery.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 210. On a motion for summary judgment, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the trail court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id*. at 211 (citations omitted) (emphasis in original). Where a genuine dispute exists as to any material fact or as to the conclusions to be drawn from those facts, a court must deny a motion

4

for summary judgment. *Id.* (citing *Dunn*, 833 S.W.2d at 80).

We first consider the trial court's granting of summary judgment in favor of Dr. Butler. The trial court granted summary judgment to Dr. Butler because Luther failed to proffer a counter-affidavit by an expert. The record indicates that on two different occasions, Luther requested that the trial court refrain from ruling on Dr. Butler's motion until he had an opportunity to file a counter-affidavit by an expert. The trial court did not respond to Luther's motion.[4]

We find that before summary judgment was entered, Luther should have been given the opportunity to proffer evidence to refute Dr. Butler's affidavit. According to *Byrd*, the nonmoving party is entitled to the opportunity to "demonstrate, by affidavits or discovery materials," the existence of a genuine issue of material facts. *Byrd*, 847 S.W.2d at 211; *Braswell v. Carothers*, 863 S.W.2d 722, 728 (Tenn. App. 1993); *see also Bradfield v. Dotson*, No. 02A01-9707-CV-00152, 1998 WL 63521, *3 (Tenn. App. Feb. 17, 1998) ("We find that it was inappropriate for the trial court to grant the defendants' motion for summary judgment without considering the plaintiff's request that the trial court compel the defendants to respond to his discovery requests.") Therefore the trial court's granting of summary judgment in favor of Dr. Butler was premature.

The trial court's granting of summary judgment in favor of the Employee Defendants was also premature. The trial court correctly found that T.C.A. § 9-8-307 (h) provides these Defendants with immunity with regard to negligence that occurred within the scope of their employment. Luther's Complaint, however, alleges more than mere negligence. For instance, it alleges a "deliberate indifference" to his medical condition. Therefore he was entitled to discovery regarding the issue of whether these Defendants acted willfully or maliciously so that their conduct was outside the scope of their employment. T.C.A. § 9-8-307 (h).

The trial court did, however, properly dismiss Luther's claims under the Eighth Amendment and 42 U.S.C. § 1983. A plaintiff alleging a claim under 42 U.S.C. § 1983 may not

---

[4] The trial court did enter an order granting the Employee Defendants' Motion to Stay Discovery. This motion, however, was filed by the Employee Defendants and not by Dr. Butler. Therefore, we find that the trial court's order did not apply to discovery related to Dr. Butler.

rely on "mere conclusory allegations" in the complaint. ***Bradfield v. Compton***, No. 02A01-9705-CH-00111, 1997 WL 739535, *4 (Tenn. App. Dec. 2, 1997) (quoting ***Chapman v. City of Detroit***, 808 F.2d 459, 465 (6th Cir. 1986)). Instead, there must be "[s]ome factual basis" for the claims alleged. *Id.* Luther's federal claims of deliberate deprivation of his individual rights qualify as "mere conclusory allegations" and are wholly unsupported by any objective facts. *Id.*

In sum, we affirm the trial court's dismissal of the Eighth Amendment and 42 U.S.C. § 1983 claims brought against the Defendants. We reverse the trial court's order staying discovery and granting of summary judgment with regard to the other claims. On remand, Luther may conduct discovery as may be deemed appropriate. ***See Dotson***, 1998 WL 63521 at *3 ("A prisoner pursuing a civil lawsuit may conduct discovery, but the discovery is subject to appropriate limitations imposed by the trial court.").

The order of the trial court is affirmed in part, reversed in part, and remanded as set out above. Costs on appeal are assessed one-half to plaintiff and one-half to defendants.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**

6