**Tanya Jo SCHAEFER, a Minor, by Natural Father and Next Friend, Michael SCHAEFER, Individually, Plaintiffs-Appellants,**

**v.**

**David M. LARSEN; James T. Swindle; Family Practice Unit, A Department of the University of Tennessee Center for the Health Sciences; and the University of Tennessee Center for the Health Sciences, Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Dec. 6, 1984.

Rehearing Denied Jan. 10 and 25, 1985.

Rehearing Denied Jan. 10, 1985.

Application for Permission to Appeal Denied by Supreme Court April 1, 1985.

Ben Todd and Lloyd C. McDougal, III, Memphis, for plaintiffs-appellants.

Thomas H. Rainey, Jackson, for David M. Larsen, M.D. and James T. Swindle, M.D.

Fred P. Wilson, Memphis, for Family Practice Unit, a Department of the University of Tennessee Center for the Health Sciences and The University of Tennessee Center for the Health Sciences.

NEARN, Presiding Judge, Western Section.

This is an appeal from the order of the Trial Court which granted summary judgment for the defendants in a medical malpractice case.

Tanya Jo Schaefer was born with a limb reduction of her right lower extremity; that is to say, she was born without a femur in her right leg. Suit was filed on her behalf by her parents against the defendant doctors and against others on the basis of vicarious liability. The suit was also brought by the parents individually for expenses incurred and for those to be incurred in the future.

The gist of the complaint is that the defendant doctors of Jackson, Tennessee, negligently caused the drug Provera to be prescribed for Mrs. Schaefer at a critical period of her pregnancy and that the use of Provera caused the birth defect in Tanya Jo Schaefer.

We have the matter before us on the technical record only and it reveals that on December 3, 1982, the defendants moved for summary judgment with supporting affidavits of Dr. Preston V. Dilts, Jr., and Dr. Robert T. Tucker, both licensed to practice medicine in Tennessee. On the same day, the deposition of Dr. Dilts was also filed. On June 22, 1983, plaintiffs responded to the motion with the affidavit of a Dr. Dudley Webber, duly licensed to practice medicine in the state of New York. There next appears in the record the affidavit of counsel for plaintiffs filed July 15, 1979, to the effect that counsel had been actively searching for but had been unable to locate an obstetrician from a contiguous state who would support their theory of the case. On July 18, 1983, the Trial Judge sustained the defendants' motion for summary judgment. On July 26, 1983, the plaintiffs filed a motion to amend or alter that judgment and submitted the affidavit of Dr. James R. Dingfelder, an obstetrician from the state of North Carolina. On April 5, 1984, the Trial Judge entered an order denying the motion to amend the judgment, which is as follows:

## ORDER OVERRULING MOTION TO ALTER OR VACATE JUDGMENT

This cause came on to be heard before the Honorable Andrew T. Taylor, Circuit Judge, upon plaintiffs' motion to alter or vacate the court's prior order sustaining defendants' motion for summary judgment, and the court being of the opinion that the motion is without merit.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the plaintiffs' motion to alter or vacate the judgment is hereby overruled.

All costs of this cause are taxed against the plaintiffs and the sureties on their bond, for which execution may issue, if necessary.

In order for a plaintiff in a medical malpractice case to recover it is indispensable for that plaintiff to show that the defendant has fallen below the standard of care recognized and accepted by those in the profession and specialty in the community in which the defendant practices or by those in a similar community. T.C.A. § 29–26–115(a) (1980). *See also Alessio v. Crook*, (1982 Tenn.App.M.S.) 633 S.W.2d 770. Of course, if such a breach of duty is shown, the plaintiff must also show that that breach was the cause of the injuries sustained. *See Alessio*, 633 S.W.2d at 776. However, summary judgment procedure is not a substitute for a trial. *Jones v. Home Indemnity Insurance Co.*, (1983 Tenn.) 651 S.W.2d 213, 214. In order to withstand a defendant's motion for summary judgment, the plaintiff does not have to "show" breach and causation in the sense of proving those elements, but must simply establish by competent means that there is a dispute over those material issues of fact raised by the record. *See Jones*, 651 S.W.2d at 214.

From our examination of the record before us, we must conclude that as of July 18, 1983, the plaintiffs' case was susceptible to summary judgment. The defendants had, by that time, produced medical affidavits and depositions opining that

the defendants had conducted themselves within the recognized standard of care of the medical community and that there was no causal connection between the administration of Provera and the complained of injury. The affidavit of Dr. Webber, furnished by the plaintiffs to counter the defendants' affidavit and deposition, was not competent to raise any issue over whether the defendant doctors had fallen below the standards of the medical community of Jackson, Tennessee. Dr. Webber was not licensed to practice in the State of Tennessee or in any contiguous state. Therefore, any opinion he had regarding the medical standards of this community was inadmissible. *See* T.C.A. § 29-26-115(b) (1980). However, that does not make his affidavit totally inadmissible. Dr. Webber's affidavit also opined that the cause of the plaintiff's birth defect was the administration of the drug Provera. Such an opinion has nothing to do with the medical standards of the Jackson community and was admissible. *See McCay v. Mitchell,* (1970 Tenn. App.W.S.) 62 Tenn.App. 424, 440, 463 S.W.2d 710, 718. Therefore, although the plaintiff's doctor's affidavit did raise a disputed issue as to causation, as defendants' medical affidavits opined that there was no causal connection between Provera and plaintiff's birth defect, it failed to counter the affidavits of defendants insofar as they showed that defendants had met community standards. Ergo, as of July 18, 1983, the Trial Judge was correct in granting the motion for summary judgment.

■ We next address the propriety of the action of the Trial Court on April 5, 1984, when plaintiff's timely motion to alter or amend the judgment was denied. Counsel for defendants insist that because the sole basis for the motion was the affidavit of Dr. Dingfelder and since it was filed subsequent to the first adverse ruling of the Court, we should apply the same rules in this instance as when reviewing the action of a Trial Judge in ruling on a motion based on newly discovered evidence. Those rules, among other things, require the moving party to show that the evidence has been discovered since trial and that it could not have been discovered prior to trial through the exercise of due diligence. The facts constituting due diligence must be set forth with particularity. *Seay v. City of Knoxville,* (1983 Tenn.App.E.S.) 654 S.W.2d 397. Counsel for defendants

argues that since no facts constituting due diligence accompanied the motion, "(T)he trial court was entirely justified—*in refusing to consider the affidavit of Dr. Dingfelder."* (emphasis ours)

■ The argument of counsel for appellees is not supported by the record. The order of the Trial Court which we have previously set forth in its entirety does not state that the affidavit of Dr. Dingfelder was not considered by the Court. The order simply states that the Trial Court found the plaintiffs' motion to be "without merit." Logic impels us to the conclusion that in order to find something without merit one had first to consider the merit alleged. From the record before us we cannot say that the Trial Judge refused to consider the affidavit of Dr. Dingfelder. On the contrary, we must assume that he did, but found it lacking. Even if this required assumption on our part be incorrect, we are not at all satisfied that the strict requirement of rules regarding newly discovered evidence should be applied to the matter of summary judgments. In matters of newly discovered evidence, the parties have already had *a trial.* The parties are entitled to one trial. The basic purpose of courts and judges is to afford the citizenry a public forum to air disputes. Therefore, in newly discovered evidence circumstances, the parties have already received that which they are basically entitled to receive and one or the other, after a full trial, is seeking a new trial or decision on the issues. In short, a party is seeking a second trial. Courts should be cautious in granting a new trial on the grounds of allegedly newly discovered evidence. However, in the matter of the reconsideration of the granting of a summary judgment motion, the party is only seeking that which he is basically entitled to—a first trial. We are of the opinion that when a summary judgment has been granted because the case at that point presents no facts upon which a plaintiff can recover, but prior to that judgment becoming final, the plaintiff is able to produce by motion facts which are material and are in dispute, the motion to alter or amend the judgment should be looked upon with favor, as the purpose of the summary judgment procedure is not to abate the trial docket of the Trial Court, but only to weed out cases for trial in which there is no genuine issue of

fact. *See Brookins v. The Round Table, Inc.,* (1981 Tenn.) 624 S.W.2d 547, 550. However, for reasons previously stated, we are not called upon to review the action of a Trial Court in failing to consider plaintiff's "late" filed affidavit as the record indicates that the affidavit was considered but found insufficient.

■ We now consider the sufficiency of Dr. Dingfelder's affidavit. Since Dr. Dingfelder is a licensed physician of a state contiguous to the state of Tennessee, his opinion evidence regarding the standards of the Jackson medical community is admissible. *See* T.C.A. § 29–26–115(b) (1980). Dr. Dingfelder swore as follows:

1. I am a physician, licensed to practice medicine in the state of North Carolina. I am currently in private practice in North Carolina and for the past two years have also been an assistant professor in clinical obstetrics and gynecology at Duke University School of Medicine at Durham, North Carolina. From 1972 until 1980 I was an associate professor of obstetrics and gynecology at the University of North Carolina in Chapel Hill, North Carolina.

2. I am familiar with the standard of care practiced by physicians with respect to the administration of medications to women who present a clinical picture similar to that presented by Sheila Schaefer. In addition to the Jackson-Madison County General Hospital records for the admission of Sheila Schaefer in December, 1976 and the records pertaining to the birth of Tanya Schaefer in September, 1977, I have also reviewed the deposition testimony of Drs. Larsen and Swindle and a genetic consultation by Dr. Wilroy.

3. It is my opinion the standard of care followed by physicians in university affiliated programs such as the one employing the physicians who are defendants in this case in 1976 was virtually the same in Tennessee and North Carolina based upon my personal contact with other health care professionals.

4. It is my opinion the defendants in this case departed from and fell below the accepted standard of medical care which patients such as the plaintiffs herein had reason to expect. The professional awareness of potential complications from medications such as provera in 1976 was such that physicians had ceased to prescribe or administer medications of that type to patients with Sheila Schaefer's symptoms in December 1976 because of the potential harm to the unborn child.

We are of the opinion that the affidavit does raise an issue of fact as to the possible negligence of the defendants. It must be admitted that proof of negligence, standing alone, is insufficient to warrant recovery. *German v. Nichopoulos,* (1978 Tenn.App.W.S.) 577 S.W.2d 197, 201. However, when this issue of fact is added to the factual issue of causal connection presented by Dr. Webber's affidavit and coupled with allegations of injury, the criteria of necessary elements to maintain an action for medical malpractice have been presented. *See German v. Nichopoulos,* 577 S.W.2d at 201. Accordingly, disputed issues of material fact have been presented by the record and the motion to reconsider should have been granted.

The result is that the judgment of the Trial Court is reversed and the cause remanded for further proceedings. Costs of appeal are adjudged against the appellee.

Done at Jackson in the two hundred and ninth year of our Independence and in the one hundred and eighty-ninth year of our Statehood.

TOMLIN and CRAWFORD, JJ., concur.

ORDER ON PETITION TO REHEAR

A petition to rehear has been late filed by the Appellees. Consequently, it will not be considered by the Court. See Rule 39(b) T.R.A.P.

/s/ Nearn  
NEARN, P.J., W.S.  
/s/ Tomlin  
TOMLIN, J.  
/s/ Crawford  
CRAWFORD, J.

ORDER

The motion of Family Practice Unit, Department of the University of Tennessee Center for the Health Sciences, and the University of Tennessee Center for the Health Sciences to join in the petition to rehear filed on behalf of David M. Larsen, M.D., and James T. Swindle, M.D., is denied.

/s/ Nearn  
NEARN, P.J., W.S.

## ORDER

The Petition to Reconsider of Dr. David M. Larsen and Dr. James T. Swindle the Order of this Court denying the Petition to Rehear is granted. Having granted same, the Petition to Rehear in this cause, having been considered, is respectfully denied.

/s/ Nearn
CHARLES E. NEARN,
PRESIDING JUDGE
/s/ Tomlin
HEWITT P. TOMLIN, JR.,
JUDGE
/s/ Crawford
W. FRANK CRAWFORD,
JUDGE

## ORDER

The Petition to Reconsider of the Defendants, Family Practice Unit, Department of the University of Tennessee Center for the Health Sciences and the University of Tennessee Center for the Health Sciences, is respectfully denied.

/s/ Nearn
CHARLES E. NEARN,
PRESIDING JUDGE
/s/ Tomlin
HEWITT P. TOMLIN, JR.,
JUDGE
/s/ Crawford
W. FRANK CRAWFORD,
JUDGE