# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

Jan. 19, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

TOM AND KAREN MOORE,    )
    )
    Plaintiffs/Appellants,    )
    )    Davidson Circuit
    )    No. 94C-1356
VS.    )
    )    Appeal No.
    )    01-A-01-9507-CV-00295
LLOYD A. WALWYN, M.D.,    )
    )
    Defendant/Appellee.    )

## DISSENTING OPINION

Both the trial court and the majority of this panel have decided that Tom and Karen Moore are not entitled to a jury trial on their medical malpractice claim against Dr. Lloyd A. Walwyn because of shortcomings in the affidavits they filed in opposition to Dr. Walwyn's motion for summary judgment. While I do not relish defending sloppy lawyering, I am convinced that my colleagues have scrutinized the Moores' counter-affidavits using standards stricter than those required by Tenn. R. Civ. P. 56.05 and Tenn. Code Ann. § 29-26-115 (1980). I would vacate the summary judgment because the counter-affidavits demonstrate the existence of genuine and material factual issues that only a jury should resolve.

### I.

Tom Moore severely injured his left forearm and left leg when he fell from a roof on May 1, 1993. He was first taken to the Williamson County Medical Center and was later transferred to the Tennessee Christian Medical Center where he came under the care of Dr. Lloyd A. Walwyn. Dr. Walwyn determined that injuries to Mr. Moore's leg required surgery and on May 2, 1993, performed an

open reduction of the fractures of the left fibula and tibia.[1] During this procedure, Dr. Walwyn repaired the fractured fibula using a plate and screws and repaired the fractured tibia using two screws. Three days after the surgery, Dr. Walwyn performed a closed manipulation of the fracture of the tibia and inserted pins into the tibia to stabilize it with an external fixator.[2]

Mr. Moore left the hospital on May 7, 1993. He changed physicians after three office visits with Dr. Walwyn between May 19 and June 16, 1993. In July 1993, the physicians at Metro General Hospital advised Mr. Moore that his leg fracture would require additional surgery because he had "infected pins on his current external fixator which communicate with his fracture site." During surgery on July 21, 1993, Dr. Melvin Law confirmed infection of the pin sites and also infected nonunion of both the left tibia and left fibula. Dr. Law irrigated and debrided the infected tibia, fibula, and pin sites. He also replaced the external fixator Dr. Walwyn had installed. Dr. Law removed the second external fixator and placed Mr. Moore's leg in a cast in October 1993.

Mr. Moore and his wife sued Dr. Walwyn and others on May 2, 1994. They alleged that the infection in Mr. Moore's leg was caused by Dr. Walwyn's negligent failure to prescribe sufficient antibiotics before, during, and after the May 2, 1993 surgery. They also alleged that the infection caused by Dr. Walwyn's negligent failure to prescribe antibiotics required Mr. Moore to undergo "four surgeries including nine different procedures" and to experience pain, suffering, additional medical expenses, and loss of wages. In addition, they alleged that Dr. Walwyn declined to treat Mr. Moore after learning that he lacked the funds to pay him.

---

[1] An open reduction of a fracture is a surgical procedure involving the manipulation of the affected bone or bones after an incision into the skin and muscle over the site of the fracture. *See* Stedman's Concise Medical Dictionary 872 (2d ed. 1994) ("Stedman's").

[2] The closed manipulation did not require a second incision; however, the pins attaching the tibia to the external fixator did protrude through the skin. A fixator is a device providing rigid immobilization through external skeletal fixation by means of rods attached to pins which are placed in or through the bone. *See* Stedman's 386.

From this point on, the case fell into the predicable pattern common to many medical malpractice cases. On October 19, 1994, Dr. Walwyn filed a motion for summary judgment supported by his own self-serving affidavit asserting in the most general terms that he "acted with ordinary and reasonable care" in accordance with "the recognized standard of professional practice in orthopaedic surgery in Nashville and similar areas."[3] This motion placed the burden squarely on the Moores to produce a competent affidavit supporting their claim that Dr. Walwyn had committed malpractice. Failure to produce competent expert testimony contradicting Dr. Walwyn's affidavit would result in the summary dismissal of the Moores' claims against Dr. Walwyn because they could only be substantiated with expert testimony.[4]

The Moores responded to Dr. Walwyn's motion for summary judgment on December 5, 1994, with a memorandum of law and a promise that counter-affidavits would be filed no later than one day before the hearing on the summary judgment motion. The Moores were apparently unable to locate an orthopaedic surgeon in Tennessee willing to testify against Dr. Walwyn. On the day before the hearing, they filed the "affidavit" of Dr. Bruce Schlafly, a board-certified orthopaedic surgeon practicing in Missouri, who opined that "Dr. Lloyd Walwyn . . . breached the recognized standard of care in failing to administer antibiotics and such breach of care caused Tom Moore injuries that he would not have otherwise suffered."

Dr. Walwyn's lawyers launched a fusillade of objections to the form, substance, and timing of Dr. Schlafly's affidavit at the December 16, 1994

---

[3]This motion was proper because a defendant physician's affidavit is sufficient by itself to support the physician's motion for summary judgment. *Smith v. Graves*, 672 S.W.2d 787, 789-90 (Tenn. Ct. App. 1984). There is, however, a growing judicial hostility toward expert affidavits used to support or to oppose motions for summary judgment that contain only an opinion without supplying a foundation of specific facts. *See* Edward Brumet, *Summary Judgment Materials*, 147 F.R.D. 647, 674-676 (1993) ("Brumet").

[4]*Goodman v. Phythyon,* 803 S.W.2d 697, 702-03 (Tenn. Ct. App. 1990); *Hurst v. Dougherty,* 800 S.W.2d 183, 185 (Tenn. Ct. App. 1990); *Parker v. Vanderbilt Univ.,* 767 S.W.2d 412, 420 (Tenn. Ct. App. 1988); *Ayers v. Rutherford Hosp., Inc.,* 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984).

hearing. The trial court decided to consider Dr. Schlafly's affidavit even though it had not been filed within the time required by the local rules of court.[5] On January 11, 1995, the trial court entered an order granting Dr. Walwyn's motion for summary judgment because "there is no genuine issue as to a material fact concerning whether the defendants deviated from the recognized standard or acceptable professional practice."

The Moores hired a second lawyer who filed a "motion to reconsider" on February 9, 1995. Since Dr. Walwyn's lawyers had taken issue with the form of Dr. Schlafly's original "affidavit," the Moores' motion was accompanied by a second affidavit by Dr. Schlafly that was "more succinct in form for the Court to consider." The motion reiterated that "there was sufficient proof to show that the Defendant deviated from the acceptable standard of care sufficient to raise a question of fact."

The trial court conducted another hearing on February 24, 1995. The trial court declined to consider Dr. Schlafly's second affidavit because the Moores had "not made a sufficient showing as to why the affidavit testimony of Dr. Schlafly in support of the Motion to Reconsider could not have been submitted earlier in response to the Defendants' Motions for Summary Judgment and why the testimony of the same witness should be considered again in this proceeding." Accordingly, the trial court denied the Moores' motion and reaffirmed its conclusion that Dr. Walwyn was entitled to a judgment as a matter of law.

---

[5]Rule 12.04(d) of the Local Rules of Practice requires responses to motions, including counter-affidavits, to be filed by the close of business on the Monday preceding the Friday on which the motion is to be heard. Accordingly, Dr. Schlafly's affidavit should have been filed by December 12, 1994. Local rules may require that opposing affidavits be filed earlier than required by the Tennessee Rules of Civil Procedure, *see Pfeil v. Rogers,* 757 F.2d 850, 857-58 (7th Cir. 1985) *cert. denied*, 475 U.S. 1107 (1986); 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2719, at 12-14 (2d ed. 1983); however, trial courts may, in their discretion, accept late affidavits. *Beaufort Concrete Co. v. Atlantic States Constr. Co.,* 352 F.2d 460, 462 (5th Cir. 1965), *cert. denied,* 384 U.S. 1004 (1966).

## II.

### PURPOSE OF SUMMARY JUDGMENTS

A summary judgment proceeding provides an efficient and effective means to conclude a case that can be decided on legal issues alone. *Alexander v. Memphis Individual Practice Ass'n,* 870 S.W.2d 278, 280 (Tenn. 1993); *White v. Methodist Hosp. South,* 844 S.W.2d 642, 651-52 (Tenn. Ct. App. 1992). It should not be used for docket control, *Schaefer v. Larsen,* 688 S.W.2d 430, 433 (Tenn. Ct. App. 1984), or to replace a trial of genuine, material factual issues. *Blocker v. Regional Medical Ctr.,* 722 S.W.2d 660, 660-61 (Tenn. 1987); *Foley v. St. Thomas Hosp.,* 906 S.W.2d 448, 452 (Tenn. Ct. App. 1995). Accordingly, summary judgment proceedings should not be permitted to become "trials by paper,"[6] and should not be used to find facts, to resolve disputed factual issues, or to choose among various factual inferences that may be drawn from undisputed facts. *Byrd v. Hall,* 847 S.W.2d 208, 216 (Tenn. 1993).

The party seeking a summary judgment has the burden of demonstrating the absence of material factual disputes and its entitlement to a judgment as a matter of law. *Byrd v. Hall,* 847 S.W.2d at 215; *Gambill v. Middle Tenn. Medical Ctr.,* 751 S.W.2d 145, 146 (Tenn. Ct. App. 1988). The courts hold parties seeking a summary judgment to stringent standards. *Baker v. Lederle Labs.,* 696 S.W.2d 890, 893 (Tenn. Ct. App. 1985). Accordingly, they will grant a summary judgment only if the facts and the conclusions reasonably drawn from the facts support the conclusion that the moving party is entitled to a judgment as a matter of law. *Brookins v. The Round Table, Inc.,* 624 S.W.2d 547, 550 (Tenn. 1981); *Mansfield v. Colonial Freight Sys.,* 862 S.W.2d 527, 530 (Tenn. Ct. App. 1993). They should not grant a summary judgment if any uncertainty or doubt exists with regard to the facts or the conclusions to be drawn from the facts. *Byrd v. Hall,* 847 S.W.2d at 211; *Poore v. Magnavox, Inc.,* 666 S.W.2d 48, 49 (Tenn. 1984); *Gambill v. Middle Tenn. Medical Ctr.,* 751 S.W.2d at 147; *Baker v. Lederle Labs.,* 696 S.W.2d at 894.

---

[6]Brumet, *supra* note 3, 147 F.R.D. at 647.

The courts customarily treat the nonmoving party's papers more indulgently than they do the papers filed by the party seeking the summary judgment. The evidence supporting and opposing the summary judgment will be considered in the light most favorable to the nonmoving party. *Speaker v. Cates Co.,* 879 S.W.2d 811, 813 (Tenn. 1994). The nonmoving party is also entitled to all favorable inferences that can be reasonably drawn from the proof. *Byrd v. Hall,* 847 S.W.2d at 210-11; *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn. 1991); *Blocker v. Regional Medical Ctr.,* 722 S.W.2d at 663. The courts' indulgence may also extend to the form of the nonmoving party's papers. Technically defective papers may be sufficient to defeat a summary judgment if they apprise the court of important relevant evidence that the nonmoving party can and will introduce at trial. 6 James A. Moore et al., *Moore's Federal Practice* ¶ 56.22[1] (2d ed. 1995); 10A Charles A. Wright et al., *Federal Practice & Procedure* § 2738, at 485 (2d ed. 1983).

## III.
### THE FORM OF TENN. R. CIV. P. 56 AFFIDAVITS

The trial court decided to consider Dr. Schlafly's original "affidavit" filed on December 15, 1994, even though its form was irregular. The majority has now concluded that the trial court should have excluded the "affidavit" because of defects in the signature and the jurat. I would not find these relatively innocuous defects to be fatal to the Moores' case.

Parties seeking or opposing a summary judgment may, but are not required to, use evidentiary materials to support their respective positions. In most circumstances, the sole purpose of these evidentiary materials is to provide the court with some reliable indication of the proof the parties intend to present at trial. *Rooker v. Rimer,* 776 S.W.2d 124, 128 (Tenn. Ct. App. 1989), *cert. denied,* 493 U.S. 1073 (1990). Tenn. R. Civ. P. 56.03 permits the use of various types of materials including affidavits, depositions, answers to interrogatories, and admissions on file. Litigants in Tennessee's courts now generally use affidavits to support and to oppose motions for summary judgment.

An affidavit is nothing more than a written statement made and signed under oath before an authorized person. *Harvey v. State,* 166 Tenn. 227, 229, 60 S.W.2d 420, 420 (1933); *Jas. N. Watt & Co. v. Carnes,* 51 Tenn. (4 Heisk.) 532, 534 (1871). Tenn. R. Civ. P. 56 contains no additional requirements with regard to the form of affidavits in summary judgment proceedings. Accordingly, documents meeting the general common-law requirements of being made and signed under oath should be considered as long as they comply with the other substantive requirements of Tenn. R. Civ. P. 56.

Dr. Schlafly's "affidavit" filed on December 15, 1994, is not in the customary affidavit form. It consists of three related documents: a one-page introductory statement, a four-page curriculum vitae, and a four-page report of Dr. Schlafly's findings and conclusions about Mr. Moore's medical care. The curriculum vitae and report are specifically incorporated into the statement. Dr. Schlafly's introductory statement recites that he was "duly sworn" and thereafter states that he has practiced his specialty in Missouri for more than one year, that Dr. Walwyn "breached the recognized standard of care in failing to administer antibiotics," and that this "breach caused Tom Moore to suffer injuries he would not have otherwise suffered as is more fully explained in my attached report." Dr. Schlafly signed the statement, but his signature is not immediately followed by a jurat and notary's signature.

The April 1994 curriculum vitae attached to the statement shows that Dr. Schlafly is a board-certified orthopaedic surgeon, that he has been licensed to practice his specialty in Missouri since 1985, and that he currently has admitting privileges at seven St. Louis-area hospitals. The report dated December 13, 1994 contains Dr. Schlafly's expert findings and conclusions based on the copies of Mr. Moore's medical records that had been provided to him. Dr. Schlafly signed the last page of the report, and a customary jurat follows his signature, as well as the seal and signature of a Missouri notary public.

The majority has decided that these documents, taken together, do not qualify as an affidavit because the first document does not contain a jurat following Dr. Schlafly's signature and because the jurat and notary's signature on

the last page of Dr. Schlafly's report is dated the day before the date appearing on the first page. The majority apparently views the difference in the dates as undisputable evidence that the jurat on the last page cannot apply to the preceding one-page statement and the curriculum vitae. There are, however, other plausible inferences. Dr. Schlafly could have post-dated or misdated the one-page statement and could have signed both the first and the last page at the same time, before the notary affixed her certificate. This conclusion is consistent with the complementary statements on the first and last pages of the documents that Dr. Schlafly was "duly sworn" before he signed and acknowledged the documents.

Even if these technical defects prevent the December 15, 1994, documents from qualifying as an "affidavit" in the strictest sense of the term, the trial court did not abuse its discretion by considering them. Despite the irregularities in their form, the documents demonstrate that Dr. Schlafly can and will provide competent expert testimony contradicting Dr. Walwyn's conclusions with regard to negligence and proximate cause. Accordingly, I cannot concur with the majority's conclusion that the form of Dr. Schlafly's December 15, 1994 "affidavit" prevents its consideration.

## IV.
### EXPERT AFFIDAVITS IN MEDICAL MALPRACTICE CASES

Tenn. R. Civ. P. 56.05 and Tenn. Code Ann. § 29-26-115 control the substance of affidavits used to support or to oppose motions for summary judgment in medical malpractice cases. Tenn. R. Civ. P. 56.05 contains three requirements. First, affidavits must be made on personal knowledge.[7] Second, they must set forth facts that would be properly admissible at trial, but the affidavits themselves need not be admissible.[8] Third, they must affirmatively

---

[7]*Price v. Becker,* 812 S.W.2d 597, 598 (Tenn. Ct. App. 1991); *State v. Hartley,* 790 S.W.2d 276, 278 (Tenn. Crim. App. 1990) (affidavit based on information and belief is insufficient); *Keystone Ins. Co. v. Griffith,* 659 S.W.2d 364, 365-66 (Tenn. Ct. App. 1983) (affidavit based on information and belief is insufficient).

[8]*Byrd v. Hall,* 847 S.W.2d at 215-16; *Teeters v. Currey,* 518 S.W.2d 512, 514 (Tenn. 1974); *Braswell v. Carothers,* 863 S.W.2d 722, 729 (Tenn. Ct. App. 1993); *Baker v. Lederle Labs.,* 696 S.W.2d at 893.

show that the affiant is competent to testify to the matters contained in the affidavit.[9] The courts may decline to consider affidavits that do not meet these standards. *See Keystone Ins. Co. v. Griffith,* 659 S.W.2d at 366.

In addition to the requirements in Tenn. R. Civ. P. 56.05, Tenn. Code Ann. § 29-26-115 contains five substantive requirements for expert affidavits in medical malpractice cases. The affiant must first demonstrate that he or she satisfies the geographic and durational requirements in Tenn. Code Ann. § 29-26-115(b). Second, the affiant must demonstrate that he or she practices in a profession or specialty that makes his or her testimony relevant to the issues in the case.[10] Third, the affiant must assert familiarity with the recognized standard of professional practice in the community where the defendant practices or in similar communities.[11] Fourth, the affiant must give an opinion concerning whether the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with the proper standard of practice.[12] Fifth, the affiant must give an opinion concerning whether the defendant's negligence more likely than not caused the plaintiff to suffer injuries that he or she would otherwise not have suffered.[13] The "more likely than not" standard has also been expressed in terms of requiring plaintiffs in medical malpractice cases to prove causation in fact as a matter of probability, not mere possibility.[14]

_____

[9]*Fowler v. Happy Goodman Family,* 575 S.W.2d 496, 498 (Tenn. 1978).

[10]Tenn. Code Ann. § 29-26-115(b). The affiant need not practice in the same specialty as the defendant physician. *Goodman v. Phythyon,* 803 S.W.2d at 701-02.

[11]Tenn. Code Ann. § 29-26-115(a)(1).

[12]Tenn. Code Ann. § 29-26-115(a)(2).

[13]Tenn. Code Ann. § 29-26-115(a)(3). *Kilpatrick v. Bryant,* 868 S.W.2d 594, 602 (Tenn. 1993) (the plaintiff must demonstrate that the defendant's negligence more likely than not caused the injury).

[14]*Kilpatrick v. Bryant,* 868 S.W.2d at 602 (causation in fact is a matter of probability not possibility); *White v. Methodist Hosp. South,* 844 S.W.2d at 648-49 (the plaintiff must prove more than a mere possibility); *Whittemore v. Classen,* 808 S.W.2d 447, 458 (Tenn. Ct. App. 1991) (a jury cannot base a verdict on "it might have been" but must find "it probably was"); *St. Martin v. Doty,* 493 S.W.2d 95, 97 (Tenn. Ct. App. 1972) (courts cannot stretch "possibilities" into "probabilities").

## DR. SCHLAFLY'S DECEMBER 15, 1994 AFFIDAVIT

The majority has concluded that Dr. Schlafly's December 15, 1994 "affidavit" is substantively deficient in three areas. First, it does not demonstrate that Dr. Schlafly is competent to give an expert opinion under the locality rule in Tenn. Code Ann. § 29-26-115(b). Second, it fails to describe the existing standard of care in Nashville and similar communities or Dr. Schlafly's familiarity with this standard. Third, it does not recite that Dr. Walwyn's negligence caused Mr. Moore's injuries "with a reasonable degree of medical certainty." I concur only with the majority's conclusion concerning the standard of care in Nashville and similar communities.

This court has admonished lawyers to couch their medical expert's conclusions in the language of Tenn. Code Ann. § 29-26-115 in order to avoid just the sort of interpretative disputes that are involved in this case. *Gambill v. Middle Tenn. Medical Ctr.,* 751 S.W.2d at 148. Careful practitioners have heeded this advice, but it is not always possible to frame expert conclusions in the precise words of the statute because of differences in the medical and legal vocabularies and frames of reference.

Tenn. Code Ann. § 29-26-115 is not "holy writ," and it should never be so rigidly applied that it requires the ritualistic incantation of its precise terms in order to permit an injured party to maintain a malpractice claim against a health care provider. The courts should expect substantial adherence to the language of Tenn. Code Ann. § 29-26-115 but should never abandon their judicial powers of reasonable interpretation and construction. At the summary judgment stage, any reasonable doubt concerning the meaning or effect of an expert affidavit should be resolved in the nonmoving party's favor.

Viewed in a light most favorable to the Moores, Dr. Schlafly's December 15, 1994 "affidavit" establishes that he is a board certified orthopaedic surgeon in Missouri and that he has been practicing his specialty in and around St. Louis

since 1985.[15]  This is sufficient to satisfy the geographic and durational requirements of Tenn. Code Ann. § 29-26-115(b).

Dr. Schlafly's statement and report also conclude that Dr. Walwyn's "breach caused Tom Moore injuries he would not have otherwise suffered" and that "the omission of intravenous antibiotics (except for the single dose), during the May hospitalization at Tennessee Christian Medical Center, was probably a contributing factor in the later development of Mr. Moore's bone infection." While the report contains other references to "possibilities" and does not preface Dr. Schlafly's opinion with the qualification that it is based on "a reasonable degree of medical certainty," these two statements, taken in a light most favorable to the Moores, should be sufficient to create a jury question on the issue of causation.[16]

The only material shortcoming in Dr. Schlafly's December 15, 1994 "affidavit" is the omission of any reference to the appropriate recognized standard of professional practice in Nashville or similar communities as required by Tenn. Code Ann. § 29-26-115(a)(1).  Dr. Schlafly's report does not state that he is familiar with the standard of practice for orthopaedic surgeons in Nashville or similar communities or that this standard requires antibiotic prophylaxis in clean orthopaedic surgery.  The report contains only a general reference to the "recognized standard of care" and to a report that "the overwhelming number of orthopaedic surgeons in the United States have chosen to adopt some type of prophylaxis."  The report does not link these general references to Middle Tennessee.[17]

---

[15]The curriculum vitae states that Dr. Schlafly completed his internship and residency in 1985 and that he was licensed to practice medicine in Missouri in 1985.

[16]Expert opinions in medical malpractice cases must be to a reasonable degree of medical certainty. *Kilpatrick v. Bryant,* 868 S.W.2d at 602.  The concept of "reasonable degree of medical certainty" is a legal, not medical, concept.  While an expert's use of these words in laying the foundation to his or her opinion is well-advised, no reported decision requires that medical experts must use this precise phrase when stating an opinion.  The phrase usually appears in a lawyer's question, not in a medical expert's answer.

[17]Dr. Schlafly stated that his opinion was based on the medical records he had been provided.  The majority seems to infer that his opinion was undermined because he did not have all the available records at hand when he formed his opinion.  The nature of the records relied on by Dr. Schlafly goes to the weight of his opinion, not his competency to give an opinion.

### DR. SCHLAFLY'S JANUARY 30, 1995 AFFIDAVIT

The majority notes that the only difference between Dr. Schlafly's December 15, 1994 and January 30, 1995 affidavits is that the latter "uses all the appropriate 'buzz' words found in the statute and the rules." Thus, the majority appears to concede, as well they must, that the January 30, 1995 affidavit meets all the requirements of Tenn. R. Civ. P. 56.05 and Tenn. Code Ann. § 29-26-115. I concur with this conclusion. It follows, therefore, that the January 30, 1995 affidavit, if entitled to consideration, establishes the existence of a material factual dispute sufficient to defeat Dr. Walwyn's motion for summary judgment.

## V.

### CONSIDERATION OF THE JANUARY 30, 1995 AFFIDAVIT

The only remaining issue concerns the trial court's decision not to consider Dr. Schlafly's January 30, 1995 affidavit because the Moores did not adequately explain the reasons for their failure to submit a proper affidavit prior to the hearing on Dr. Walwyn's summary judgment motion. The majority has affirmed the trial court's decision because the second affidavit does not contain "new evidence" and because it is "nothing more than the first affidavit dressed up." The majority's reasoning is plainly at odds with our prior opinions permitting the consideration of late-filed affidavits in opposition to motions for summary judgment.

This court has specifically held that the "newly discovered evidence" standard normally associated with motions for new trial should not be used in summary judgment cases to exclude affidavits attached to timely filed Tenn. R. Civ. P. 59.04 motions to alter or amend. *Richland Country Club v. CRC Equities, Inc.,* 832 S.W.2d 554, 557-58 (Tenn. Ct. App. 1991); *Schaefer v. Larsen,* 688 S.W.2d at 433. Accordingly, we have directed trial courts to look with favor on Tenn. R. Civ. P. 59.04 motions filed before a summary judgment becomes final

---

Courts should not weigh the evidence in a summary judgment proceeding. *Byrd v. Hall,* 847 S.W.2d at 211.

because the moving party is seeking an opportunity to try its case for the first time.[18]

The Moores' Tenn. R. Civ. P. 59.04 motion was filed before the order granting Dr. Walwyn's motion for summary judgment became final and did not invoke the "newly discovered evidence" standard. Dr. Schlafly's second affidavit was not intended to supply new evidence but rather to cure perceived deficiencies in his first affidavit. Tenn. R. Civ. P. 56.05 specifically authorizes trial courts to permit parties to supplement affidavits filed in summary judgment proceedings. The trial court should have considered Dr. Schlafly's supplemental affidavit in this case because it established that Dr. Walwyn had not carried his burden of demonstrating the absence of genuine, material factual disputes.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[18]We have not encouraged the same liberality with regard to affidavits attached to Tenn. R. Civ. P. 60 motions filed after a summary judgment has become final. *Braswell v. Carothers,* 863 S.W.2d at 730 (the judgment was final and the movant relied on the newly discovered evidence rule); *Blair v. Johnson City Medical Ctr.,* 724 S.W.2d 370, 371 (Tenn. Ct. App. 1986) (the requirements of Tenn. R. Civ. P. 60 were not met).