# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

BILLIE J. RUSSELL, and )
BILLIE J. RUSSELL as Administratrix )
on behalf of Deceased, Robert L. Russell, )
                   )
         Plaintiff/Appellant, )      Hardison Law No. 8540
                   )
vs. )
                   )      Appeal No. 02A01-9703-CV-00053
Y. N. PAKKALA, M.D. and )
BOLIVAR COMMUNITY HOSPITAL, )
                   )
         Defendants/Appellees. )

FILED

January 14, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

## APPEAL FROM THE CIRCUIT COURT HARDEMAN COUNTY
## AT BOLIVAR, TENNESSEE

### THE HONORABLE JON KERRY BLACKWOOD, JUDGE

For the Plaintiff/Appellant:          For the Defendants/Appellees:

Charles E. Hodum                 Marty R. Phillips
Mitzi C. Johnson                  Jackson, Tennessee
Collierville, Tennessee

**REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is a medical malpractice case. The trial court granted the defendants' motion for summary judgment, based on the insufficiency of the affidavits submitted by the plaintiff in opposition to the motion. The plaintiff appeals the trial court's decision. We remand.

On August 3, 1993, Defendant/Appellee Dr. Y. N. Pakkala ("Dr. Pakkala") performed a laparoscopic cholecystectomy on the Plaintiff/Appellee Billie J. Russell ("Russell"), a fifty-six year old woman, at the Defendant/Appellee Bolivar Community Hospital ("BCH") in Bolivar, Tennessee. The surgical procedure involved the examination of the abdominal cavity with a camera through a small incision in the abdominal wall, and removal of the gallbladder. During the surgery, Dr. Pakkala lacerated Russell's right iliac artery, causing two perforations and internal bleeding. Dr. Pakkala sutured one of the perforations. In order to repair the perforation, a much longer incision in Russell's abdominal area had to be made. He found no signs of continued bleeding, and therefore assumed he had completely repaired the artery. However, Russell's condition did not improve. Dr. Pakkala sent her to Jackson, Tennessee, where another surgeon, Dr. Harvey Harmon, found and repaired the second perforation. The second surgery to repair the perforation was successful.

Russell sued Dr. Pakkala and BCH, alleging that Dr. Pakkala was negligent in his treatment of Russell and that BCH was negligent in not keeping vascular clamps available for emergencies. The defendants moved for summary judgment, submitting Dr. Pakkala's affidavit in support of their motion.

In response, Russell filed affidavits from four physicians, discussed in more detail below. The trial court found that Russell's affidavits were insufficient to raise a genuine issue of material fact, and granted the defendants' motion for summary judgment. Russell then filed this appeal.

On appeal, Russell argues that the trial court erred in granting summary judgment to the defendants in this case because her medical experts presented testimony which raised genuine issues of material fact. Dr. Pakkala and BCH maintain that summary judgment was proper because Russell failed to produce competent expert testimony concerning Dr. Pakkala's alleged failure to meet the standard of care in his community, and concerning the issue of causation.

Summary judgment is proper when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. In the event that the moving party files a properly supported summary judgment motion, "the burden of production of evidence shifts to the non-moving party to produce evidence

which would establish a genuine factual dispute." ***Masters v. Rishton***, 863 S.W.2d 702, 705 (Tenn. App. 1992). When the defense moves for summary judgment, as in this case, the plaintiff must present evidence that establishes the essential elements of his claim. ***Blair v. Allied Maintenance Corp.***, 756 S.W.2d 267, 269-70 (Tenn. App. 1988).

On a motion for summary judgment, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." ***Byrd v. Hall***, 847 S.W.2d 208, 210-11. In ***Byrd***, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact.

***Id.*** at 211 (citations omitted). No presumption of correctness attaches to the trial court's conclusions of law. *See **Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995).

Tennessee Code Annotated § 29-26-115 sets forth the plaintiff's burden of proof in a medical malpractice action:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
>
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering states a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115(a) and (b) (1980 & Supp. 1997). *See also **White v. Methodist Hosp. South***, 844 S.W.2d 642, 648-49 (Tenn. App. 1992); ***Schaefer v. Larsen***, 688 S.W.2d 430, 432 (Tenn. App. 1984); ***Dolan v. Cunningham***, 648 S.W.2d 652, 654 (Tenn. App. 1982). In medical malpractice actions, negligence and causation are established by medical expert testimony. Tenn.

2

Code Ann. § 29-26-115(b) (1980); *Stokes v. Leung*, 651 S.W.2d 704, 706 (Tenn. App. 1982). "Causation in fact is a matter of probability, not possibility, and in a medical malpractice case, such must be shown to a reasonable degree of medical certainty." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 602 (Tenn. 1993) (citing *White v. Methodist Hosp. South*, 844 S.W.2d 642, 648-49 (Tenn. App. 1992)).

In support of the defendants' motion for summary judgment, they submitted Dr. Pakkala's affidavit, which stated that he was licensed to practice medicine in Tennessee during the year prior to the alleged malpractice, practiced general surgery during that time, knew the recognized standard of acceptable professional practice required of a general surgeon in Bolivar, Tennessee in 1993, and that he complied with the recognized standard of acceptable professional practice in his treatment of Russell.

In response, Russell submitted sworn statements by Dr. Harvey Harmon, Dr. Mark Josovitz and Dr. Raymond Hawkins, as well as an affidavit by Dr. J. T. Davis, Jr. Subsequently, the defendants obtained and submitted an affidavit and deposition by Dr. Harmon, and a sworn statement by Dr. Josovitz. To determine the sufficiency of the plaintiff's response to the defendants' motion for summary judgment, the testimony of each expert is considered below.

DR. HARVEY HARMON

Dr. Harvey Harmon was contacted by Dr. Pakkala when Dr. Pakkala encountered problems with Russell's laparoscopic surgery, and Dr. Harmon performed the second surgery to mend the perforation. In his sworn statement dated February 14, 1994, Dr. Harmon opined that Dr. Pakkala's unsuccessful attempt at mending the perforated artery was not done correctly. Dr. Harmon indicated that Dr. Pakkala should have used a method to temporarily stop the bleeding that took little time, instead of spending an inordinate amount of time in an unsuccessful attempt to mend the artery, since the time delay worsened Russell's condition. Nevertheless, Harmon was able to mend the tear and correct the problem.

The defendants subsequently obtained an affidavit from Dr. Harmon, dated September 4, 1996, in which he stated that he was not familiar with the standard of acceptable professional practice required of a general surgeon practicing in Bolivar in 1993, and that he could not offer an opinion on the subject. Dr. Harmon reaffirmed this opinion in his deposition dated October 25, 1996. Because Dr. Harmon acknowledged that he lacked knowledge about the standard of care in

3

Bolivar, Tennessee in 1993, and did not express an opinion about causation of Russell's injuries, the trial court correctly found that Dr. Harmon's testimony was insufficient to overcome the defendant's motion for summary judgment. *See Mabon v. Jackson-Madison Co. Gen. Hosp.*, No. 02A01-9702-CV-00039, (slip op.) (Tenn. App. Sept. 9, 1997) (citing *Cardwell v. Bechtol*, 724 S.W.2d 739 (Tenn. 1987)); *Osler v. Burnett*, No. 02A01-9202-CV-00046, 1993 WL 90381 (Tenn. App. March 30, 1993); *Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d 155 (Tenn. App. 1984).

## DR. MARK S. JOSOVITZ

Dr. Mark Josovitz gave Russell a sworn statement on November 15, 1993, in which he opined that, based on a reasonable degree of medical certainty, Dr. Pakkala failed to conform to a reasonable standard of care in his treatment of Russell by failing to insufflate (inflate) the abdomen for the surgery. Dr. Josovitz stated that Dr. Pakkala's negligent failure to insufflate caused the laceration of the artery, which resulted in injury to Russell, including permanent disability.

The defendants subsequently obtained a sworn statement from Dr. Josovitz on September 4, 1996, in which he stated that he did not perform surgery and did not know the recognized standard of acceptable professional practice required of a general surgeon such as Dr. Pakkala. Dr. Josovitz indicated that he would defer to Dr. Harmon's opinion regarding whether or not Dr. Pakkala's actions caused injury to Russell. Contradictory statements by the same witness regarding a particular fact cancel each other out. *Tibbals Flooring Co. v. Stanfill*, 410 S.W.2d 892, 896 (Tenn. 1967). The trial judge has broad discretion in determining the qualifications for admissibility of testimony of expert witnesses. *See Shelby County v. Barden*, 527 S.W.2d 124, 131 (Tenn. 1975). Since Dr. Josovitz stated that he did not know the recognized standard of medical care applicable to Dr. Pakkala in this case, and deferred to Dr. Harmon on the issue of causation, the trial court correctly concluded that Dr. Josovitz' testimony was insufficient to overcome the defendants' motion for summary judgment.

4

Dr. Raymond Hawkins, Jr. repaired an incisional hernia suffered by Russell approximately two years after the surgery by Dr. Pakkala. He gave a sworn statement for Russell in October, 1995, in which he stated that he had practiced as a surgeon in Somerville, Tennessee for over twenty years. In his statement, he explained that an "incisional hernia is just a weakness in the abdominal wall musculature where the intestines come out through that hole." He said that the incisional hernia was caused by the long incision made to repair the perforations made by Dr. Pakkala in the original laparoscopic gall bladder surgery. Consequently, he was of the opinion that the incisional hernia "ultimately" resulted from the gall bladder surgery performed by Dr. Pakkala, since if Dr. Pakkala "had not torn the iliac artery, she wouldn't have had that big long incision" and "the incisional hernia developed after she had that big long incision."

In his sworn statement, Dr. Hawkins stops short of stating that Dr. Pakkala was negligent in his treatment of Russell. He noted that he had performed over 200 laparoscopic gall bladder operations, and that perforating the right iliac artery during the course of such surgery was "extremely uncommon." He noted that he understood from Dr. Josovitz' affidavit that Dr. Pakkala did not insufflate the abdomen for the surgery, and stated that insufflating the abdomen is "the usual routine" because "you're more likely . . . to perforate all of those structures if you don't insufflate the abdomen." While calling it "dangerous" not to do so, he noted that "the minority" do not insufflate. Dr. Hawkins did not state that he was familiar with the standard of acceptable medical practice in Bolivar, did not state that Somerville was a "similar community" to Bolivar from a medical standpoint, and did not state that Dr. Pakkala's treatment of Russell was not in accordance with the standard.

Dr. Hawkins' sworn statement was insufficient to establish negligence by Dr. Pakkala under Tennessee Code Annotated § 29-26-115(a)(1) and (2). Dr. Hawkins did not indicate that he was familiar with the standard of acceptable medical practice in Bolivar or that Somerville is "a similar community" to Bolivar with respect to the medical standard. Consequently, his statement does not establish that he was competent, under the statute, to state that Dr. Pakkala "failed to act with ordinary and reasonable care in accordance with such standard." Tenn. Code Ann. § 29-26-115(a)(2).

However, under Tennessee Code Annotated § 29-26-115(a)(3), there is no requirement that

the medical expert be familiar with the standard for acceptable medical practice in the relevant community in order to testify as to causation. Regarding causation, the statute states:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> ***
>
> > (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
>
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred.

Tenn. Code Ann. § 29-26-115(a)(3) and (b) (1980 & Supp. 1997). The medical expert "must meet the licensing and geographic requirements of Section (b)" in order to be competent to testify as to causation. *Payne v. Caldwell*, 796 S.W.2d 142, 143 (Tenn. 1990). Dr. Hawkins testified that he was licensed to practice medicine in Tennessee and that he had practiced in Tennessee as a general surgeon for over twenty years. Thus, under the statute, he was competent to testify to establish causation under subsection (a)(3), but not negligence under subsections (a)(1) and (2).

In and of itself, then, Dr. Hawkins' sworn statement was not sufficient to overcome the defendants' motion for summary judgment, because it does not establish negligence.

DR. J. T. DAVIS, JR.

The plaintiff also submitted an affidavit by Dr. J. T. Davis, Jr., dated September 18, 1996. In the affidavit, Dr. Davis noted that he had received the medical records regarding Dr. Pakkala's diagnosis and surgery on Russell, as well as the records from Dr. Harmon's treatment of Russell. He stated in pertinent part:

> 1. I am a medical doctor, more specifically educated as a specialist in the field of cardiovascular surgery, currently and continually licensed to practice medicine in the State of Tennessee. I am aware of the recognized standard of acceptable medical practice required of a general surgeon practicing in the State of Tennessee and in Bolivar, Hardeman County, Tennessee, in 1993.
>
> * * *
>
> 4. While attempting the laparoscopic cholecystectomy, Dr. Pakkala perforated Mrs. Russell's right iliac artery. This is a rare and very uncommon complication to be expected from this type surgery.
>
> 5. It is my opinion, based on a reasonable degree of medical certainty, (meaning more than a 50% probability) that Dr. Y.N. Pakkala, on August 3, 1993 failed to

6

comply with the recognized standard of acceptable professional practice required of a general surgeon practicing in Bolivar, Hardeman County, Tennessee during August, 1993, with his care and treatment of Billie Russell. These failures to conform to a reasonable standard of medical care in his treatment of Mrs. Russell include, but are not necessarily limited to the following:

(a) In recognizing she was potentially a risky patient given her history of diabetes, coronary disease, obesity, and other ailments, but failing to treat her as high risk and refer her to an individual capable of treating a high risk patient;

(b) Failure to transport her to another facility equipped to treat a high-risk patient;

(c) In attempting to perform a laparoscopic cholecystectomy without the needed training and skills expected of a general surgeon to adequately perform such a surgery; and manage the inherent complications;

(d) In attempting to perform a laparoscopic cholecystectomy without having easily accessible the equipment needed to perform said surgery and treat complications.

(e) In failing to control bleeding of the perforated artery and to facilitate transporting the patient to a vascular surgeon within a reasonable period of time;

(f) In failing to follow the stated directions of Dr. Harvey Harmon, a vascular surgeon in Jackson, Tennessee;

(g) In attempting to mend or repair the perforated artery without being a vascular surgeon and without having the experience, training or equipment to repair the artery;

(h) In giving the patient heparin, a medication which the defendant knew or should have known was inappropriate under the given medical circumstances.

The affidavit does not state how long Dr. Davis had been licensed in Tennessee. Specifically, it does not state that Dr. Davis had practiced cardiovascular surgery in Tennessee "during the year preceding the date that the alleged injury or wrongful act occurred." Tenn. Code Ann. § 29-26-115(b). However, it states that Dr. Davis is "currently and continually licensed to practice medicine in the State of Tennessee." He asserts that he was "aware" of the standard of acceptable medical practice required of a general surgeon in Bolivar, Tennessee in 1993.

In his affidavit, Dr. Davis does not address causation of injury. However, it is undisputed that Russell underwent a second surgery as a result of Dr. Pakkala's perforation of her artery during the laparoscopic procedure. Even if Russell had no complications from the second surgery, the fact that she had to undergo a second surgery constitutes injury. Moreover, as discussed above, Dr. Hawkins testified that Russell's incisional hernia occurred because Dr. Pakkala perforated the artery during the initial gall bladder surgery which resulted in a "big long incision" from the subsequent repair surgery. Therefore, in this case, if Russell submits proof that the initial perforation of the artery by Dr. Pakkala was negligent, this would be sufficient to overcome the defendants' motion

7

for summary judgment.

In his affidavit, Dr. Davis notes that, during the laparoscopic cholecystectomy, Dr. Pakkala perforated Russell's right iliac artery. He described this a "a rare and very uncommon complication to be expected from this type surgery." In the next paragraph, Dr. Davis enumerates the ways in which Dr. Pakkala's care of Russell fell below the applicable standard of acceptable professional practice. Among these, he lists "attempting to perform a laparoscopic cholecystectomy without the needed training and skills expected of a general surgeon to adequately perform such a surgery. . . ." The remainder of the list addresses allegedly negligent acts <u>after</u> the perforation of the artery, such as failing to transport Russell to a vascular surgeon within a reasonable length of time. There is no competent testimony in the record establishing that Dr. Pakkala's alleged negligence <u>after</u> the artery was perforated caused injury to Russell.

To overcome the defendants' motion for summary judgment, the plaintiff must show an act that fell below the acceptable standard of medical practice and an injury proximately caused <u>by that act</u>. Negligence and causation of injury can be established from more than one affidavit, i.e., negligence established by one medical expert and causation of injury by another. *See Schaefer v. Larsen*, 688 S.W.2d 430, 433 (Tenn. App. 1984); *McCay v. Mitchell*, 463 S.W.2d 710, 718 (Tenn. App. 1970); *but see Payne v. Caldwell*, 796 S.W.2d 142, 143 (Tenn. 1990).[1] However, they must both correspond to the same allegedly negligent act or omission. Accordingly, the plaintiff must demonstrate a genuine issue of material fact as to whether Dr. Pakkala's perforation of the artery during the laparoscopic procedure was negligent.

Dr. Davis' affidavit is unclear in two respects. First, it is unclear whether Dr. Davis was licensed in Tennessee during the year preceding the alleged wrongful act, as required by statute. Tenn. Code Ann. § 29-26-115(b). Dr. Davis states that he is "currently and continually licensed to

---

[1]In *Payne*, the Tennessee Supreme Court held that a medical expert must meet the licensing and geographic requirements of Tenn. Code Ann. § 29-26-115(b) in order to testify as to causation. In so holding, the Court stated: "The proof of each element in a medical malpractice action is so entwined that it is difficult, if not impossible, for a witness to testify on the issue of causation without commenting, either expressly or tacitly, on the standard of care or whether or not it was breached." *Payne*, 796 S.W.2d at 143. The Court's holding, however, was limited to requiring witnesses testifying on causation to meet the requirements of Section (b).

practice medicine in the State of Tennessee" and that he was "aware" of the standard of acceptable medical practice required of a general surgeon in Bolivar in 1993.

In addition, it is unclear whether Dr. Davis is of the opinion that Dr. Pakkala's initial perforation of Russell's artery was the result of actions which fell below the applicable standard of acceptable medical practice. He describes the perforation as "a rare and very uncommon complication. . . ." He states expressly that Dr. Pakkala fell below the applicable standard in a number of respects. He then lists among these Dr. Pakkala's attempt "to perform a laparoscopic cholecystectomy without the needed training and skills expected of a general surgeon to adequately perform such a surgery. . . ." Although it is ambiguous, this could be interpreted to mean that Dr. Davis is of the opinion that Dr. Pakkala's perforation of the artery was negligent, a result of his alleged lack of the "training and skills" needed to perform the surgery.

In considering a grant of summary judgment, we are obliged to "take the strongest legitimate view of the evidence in favor of the non-moving party, and allow all inferences in favor of that party . . . ." ***Byrd v. Hall***, 847 S.W.2d 208, 209-11. In discussing cases in which summary judgment is appropriate, the Tennessee Supreme Court has stated:

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

***Evco Corp. v. Ross***, 528 S.W.2d 20, 24-25 (Tenn. 1975). In this case, there is "uncertainty" about whether there may be a factual dispute regarding whether Dr. Pakkala's perforation of Russell's artery during the initial surgery was negligent. Although the issue is very close, under these circumstances, summary judgment is inappropriate.

Under Tennessee Code Annotated § 27-3-128, the appellate court may remand the proceedings to the trial court for correction of the record "where, in its opinion, complete justice cannot be had by [by reason of?] some defect in the record, want of proper parties, or oversight without culpable negligence." Dr. Davis' statements are unclear regarding his licensing in Tennessee during the year preceding the alleged wrongful act. In the absence of a determination as to whether he was licensed during this time period, "complete justice cannot be had. . . ."

9

Consequently, we remand the case for the trial court to determine whether Dr. Davis was licensed in Tennessee during the pertinent time period.  If so, we find that the trial court's grant of summary judgment was improper and must be reversed.

The case is remanded to the trial court for further proceedings in accordance with this Opinion.  Costs are assessed equally against the Appellant and the Appellees, for which execution may issue if necessary.


_____
_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**ALAN E. HIGHERS, J.**